UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXCELLED SHEEPSKIN & LEATHER COAT CORP., | |
| Plaintiff, | Civil Action No. 12-cv-1416 |
| v. | |
| OREGON BREWING COMPANY, | |
| Defendant. | |

## OREGON BREWING COMPANY'S AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Oregon Brewing Company ("Defendant") states the following Answer and Affirmative Defenses in response to the Complaint of Plaintiff Excelled Sheepskin & Leather Coat Corp. ("Plaintiff").

### ANSWER

1.      Defendant admits that Plaintiff purports to allege claims for trademark infringement, trademark counterfeiting, and unfair competition arising under the laws of the United States (Trademark Act of 1946, 15 U.S.C. § 1051 et seq.), the statutory law of the State of New York, and the common law, but denies that those claims are valid or state a claim upon which relief can be granted.

2.      Defendant admits the allegations in Paragraph 2 of the Complaint.

3.      Defendant admits the allegations in Paragraph 3 of the Complaint.

4.      Defendant denies that the Court has subject matter jurisdiction over the claims alleged herein, because they arise out of and relate to a 2007 Settlement Agreement between the parties, which provides that any such claims must be brought in Oregon. Ex. A. Defendant

admits that the parties are of diverse citizenship.  Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 4 of the Complaint and thus denies them.

5.      Defendant denies the allegations in Paragraph 5 of the Complaint.  The Court lacks personal jurisdiction over Defendant for the claims asserted in the Complaint because, among other things, the claims arise out of and relate to a 2007 Settlement Agreement between the parties, which provides that any such claims must be brought in Oregon.  Ex. A.

6.      Defendant denies the allegations in Paragraph 6 of the Complaint.

7.      Defendant denies the allegations in Paragraph 7 of the Complaint.  Venue is improper in this judicial district because the claims asserted in the Complaint arise out of and relate to a 2007 Settlement Agreement between the parties, which provides that any such claims must be brought in Oregon.  Ex. A.

8.      Defendant denies the allegations in Paragraph 8 of the Complaint.

9.      Defendant denies the allegations in Paragraph 9 of the Complaint.

10.     Defendant admits that Plaintiff is the record owner of Trademark Registration Nos. 3,346,559; 3,260,143; 2,790,074 and 3,945,523.  Defendants denies remaining allegations in Paragraph 10 of the Complaint.

11.     Defendant denies the allegations in Paragraph 11 of the Complaint.

12.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint and thus denies them.

13.     Defendant denies the allegations in Paragraph 13 of the Complaint.

14.     Defendant admits the allegations in Paragraph 14 of the Complaint.

15.    Defendant admits that it sells promotional products and items of clothing bearing the mark ROGUE in its brewpubs and its web site.  Defendant denies the remaining allegations in Paragraph 15 of the Complaint.

16.    Defendant denies the allegations in Paragraph 16 of the Complaint.

17.    Defendant denies the allegations in Paragraph 17 of the Complaint.

18.    Defendant denies the allegations in Paragraph 18 of the Complaint.

19.    Defendant denies the allegations in Paragraph 19 of the Complaint.

20.    Defendant admits the allegations in Paragraph 20 of the Complaint.

21.    Defendant denies that, at the time it initially applied to register the mark ROGUE for clothing, its use of the mark was limited to the sale of products in its brewpubs and web site. Defendant also denies the remaining allegations in Paragraph 21 of the Complaint, except Defendant admits that at the time it initially applied to register the mark ROGUE for clothing, it did not include a restriction in the channels of trade in which the goods were sold in the identification of goods in its trademark application.

22.    Defendant denies the allegations in Paragraph 22 of the Complaint.

23.    Defendant denies the allegations in Paragraph 23 of the Complaint.

24.    Defendant denies the allegations in Paragraph 24 of the Complaint.

25.    Defendant denies the allegations in Paragraph 25 of the Complaint.

26.    Defendant denies the allegations in Paragraph 26 of the Complaint.

27.    Defendant denies the allegations in Paragraph 27 of the Complaint.

28.    Defendant admits that it owns a federal trademark registration for the mark ROGUE for "clothing, namely, t-shirts, sweatshirts, polo shirts, turtlenecks, aprons, hats, and not including jackets, coats and skirts, sold primarily in the trademark owner's brewpubs and web

site, as compliments to and in promotion of the trademark owner's brewing and beverage businesses." Defendant denies the remaining allegations in Paragraph 28 of the Complaint.

29.     Defendant denies the allegations in Paragraph 29 of the Complaint.

30.     Defendant admits that Plaintiff is the record owner of Trademark Registration No. 3,346,559 for ROGUE.  Defendant denies the remaining allegations in Paragraph 30 of the Complaint.

31.     Defendant denies the allegations in Paragraph 31 of the Complaint.

## COUNT I

32.     Defendant admits that Plaintiff purports to allege as a separate cause of action and ground for relief that Defendant has and is engaged in acts of counterfeiting in violation of 15 U.S.C. § 1114(1)(b), but denies that that cause of action or ground for relief are valid or state a claim upon which relief may be granted.  Defendant incorporates its responses to Paragraphs 1-31 of the Complaint as if set forth herein.

33.     Defendant denies the allegations in Paragraph 33 of the Complaint.

34.     Defendant denies the allegations in Paragraph 34 of the Complaint.

35.     Defendant denies the allegations in Paragraph 35 of the Complaint.

36.     Defendant denies the allegations in Paragraph 36 of the Complaint.

37.     Defendant denies the allegations in Paragraph 37 of the Complaint.

38.     Defendant denies the allegations in Paragraph 38 of the Complaint.

39.     Defendant denies the allegations in Paragraph 39 of the Complaint.

## COUNT II

40.     Defendant admits that Plaintiff purports to allege as a separate cause of action and ground for relief that Defendant has and is engaged in acts of trademark infringement, in

violation of 15 U.S.C. § 1114(1)(a), but denies that that cause of action and ground for relief are valid or state a claim upon which relief may be granted.  Defendant incorporates its responses to Paragraphs 1-39 of the Complaint as if set forth herein.

      41.    Defendant denies the allegations in Paragraph 41 of the Complaint.

      42.    Defendant denies the allegations in Paragraph 42 of the Complaint.

      43.    Defendant denies the allegations in Paragraph 43 of the Complaint.

      44.    Defendant denies the allegations in Paragraph 44 of the Complaint.

      45.    Defendant denies the allegations in Paragraph 45 of the Complaint.

## COUNT III

      46.    Defendant admits that Plaintiff purports to allege as a separate cause of action and ground for relief that Defendant has and is engaged in the use of a false designation of origin and in acts of unfair competition in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), but denies that that cause of action and ground for relief are valid or state a claim upon which relief may be granted.  Defendant incorporates its responses to Paragraphs 1-45 of the Complaint as if set forth herein.

      47.    Defendant denies the allegations in Paragraph 47 of the Complaint.

      48.    Defendant denies the allegations in Paragraph 48 of the Complaint.

      49.    Defendant denies the allegations in Paragraph 49 of the Complaint.

      50.    Defendant denies the allegations in Paragraph 50 of the Complaint.

      51.    Defendant denies the allegations in Paragraph 51 of the Complaint.

      52.    Defendant denies the allegations in Paragraph 52 of the Complaint.

## COUNT IV

53.     Defendant admits that Plaintiff purports to allege as a separate cause of action and ground for relief that Defendant has and is engaged in deceptive and unfair trade practices within the meaning of N.Y. Gen. Bus. Law § 349, but denies that that cause of action and ground for relief are valid or state a claim upon which relief may be granted.  Defendant incorporates its responses to Paragraphs 1-52 of the Complaint as if set forth herein.

54.     Defendant denies the allegations in Paragraph 54 of the Complaint.

55.     Defendant denies the allegations in Paragraph 55 of the Complaint.

56.     Defendant denies the allegations in Paragraph 56 of the Complaint.

57.     Defendant denies the allegations in Paragraph 57 of the Complaint.

58.     Defendant denies the allegations in Paragraph 58 of the Complaint.

## COUNT V

59.     Defendant admits that Plaintiff purports to allege as a separate cause of action and ground for relief that Defendant has and is engaged in acts of trademark infringement in violation of the common law, but denies that that cause of action and ground for relief are valid or state a claim upon which relief may be granted.  Defendant incorporates its responses to Paragraphs 1-58 of the Complaint as if set forth herein.

60.     Defendant denies the allegations in Paragraph 60 of the Complaint.

61.     Defendant denies the allegations in Paragraph 61 of the Complaint.

62.     Defendant denies the allegations in Paragraph 62 of the Complaint.

63.     Defendant denies the allegations in Paragraph 63 of the Complaint.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses to Plaintiff's Complaint and the claims for relief stated therein:

### FIRST AFFIRMATIVE DEFENSE

### (Lack of Personal Jurisdiction)

1.      The Court lacks personal jurisdiction over Defendant relating to the claims alleged in Plaintiff's Complaint because, among other things, the claims arise out of and relate to the 2007 Settlement Agreement between the parties, which is attached as Exhibit A, and which requires that the claims be asserted in an Oregon court.

### SECOND AFFIRMATIVE DEFENSE

### (Improper Venue)

2.      Venue is improper for the claims alleged against in Plaintiff's Complaint, because among other things, the claims arise out of and relate to the 2007 Settlement Agreement between the parties, which is attached as Exhibit A, and which requires that the claims be asserted in an Oregon court.

### THIRD AFFIRMATIVE DEFENSE

### (Compulsory Counterclaims)

3.      Plaintiff's Complaint, and the claims alleged therein, are barred because they were compulsory counterclaims in a prior, pending action in Oregon.

### FOURTH AFFIRMATIVE DEFENSE

### (Failure To State A Claim)

4.      Plaintiff's Complaint, and the claims for relief alleged therein, fail to allege facts sufficient to state a claim upon which relief may be granted, including because the claims alleged

in Plaintiff's Complaint arise out of and relate to a 2007 Settlement Agreement between the parties, which requires that the claims be brought in Oregon, and because the claims alleged in Plaintiff's Complaint are barred by the 2007 Settlement Agreement between the parties.  Ex. A.

### FIFTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

5.      Plaintiff's Complaint, and the claims for relief alleged therein, are barred because Plaintiff lacks standing.

### SIXTH AFFIRMATIVE DEFENSE

### (Statutes Of Limitation)

6.      Plaintiff's Complaint, and the claims for relief alleged therein, are barred by the applicable statutes of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

7.      Plaintiff's Complaint, and the claims alleged therein, are barred because it has waived whatever right it may have had to assert the claims.  Plaintiff failed to take proper steps to assert those claims in a timely manner, knowingly relinquished such claims and otherwise acted in a manner inconsistent with an intent to assert or preserve its right to assert such claims.

### EIGHTH AFFIRMATIVE DEFENSE

### (Estoppel)

8.      Plaintiff's Complaint, and the claims alleged therein, are barred by estoppel, including licensee estoppel.  Plaintiff failed to take proper steps to assert in a timely fashion the claims alleged in the Complaint and otherwise acted in a manner inconsistent with an intent to assert or preserve its right to assert any of the claims, all to the detriment of Defendant.

## NINTH AFFIRMATIVE DEFENSE

### (Ratification, Consent and Acquiescence)

9.      Plaintiff's Complaint, and the claims alleged therein, are bared because Plaintiff (and/or its agents) ratified, agreed to, consented to, and/or acquiesced in, the acts upon which its Complaint is based.

## TENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

10.      Plaintiff's Complaint, and the claims alleged therein, are barred because of Plaintiff's unclean hands and/or the doctrine of *in pari delicto*.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Laches)

11.      Plaintiff's Complaint, and the claims alleged therein, are barred by laches as Plaintiff unreasonably delayed in bringing this action and thus prejudiced the rights of Defendant.

## TWELFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

12.      If Plaintiff is entitled to any relief from Defendant as a result of the allegations in its Complaint, which Defendant denies, Plaintiff is not entitled to recover the amount of damages or other relief alleged, or any damages or other relief, due to its failure to take reasonable efforts to mitigate or minimize the damages incurred.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Set-Off)

13.     Any damage or loss sustained by Plaintiff was proximately caused and/or contributed to by Plaintiff's conduct, thereby precluding Plaintiff's Complaint and the claims alleged therein, reducing Plaintiff's recoverable damages, and/or entitling Defendant to a proportional set-off.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Offset)

14.     Plaintiff is not entitled to recover all or any part of the damages or other relief prayed for in the Complaint because Defendant has for claims for damages against Plaintiff and are legally entitled to an offset of such amounts.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (*De Minimis*, Remote, Speculative or Transient Damages)

15.     Any losses or damages allegedly caused by Defendant and sustained by Plaintiff, which Defendant deny, are *de minimis*, remote, speculative, or transient and not cognizable at law.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Contract)

16.     Plaintiff's Complaint, and the claims alleged therein, are barred by various contracts between the parties, including without limitation, the 2007 Settlement Agreement.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

17.     Defendant presently has insufficient knowledge and information as to whether it may have additional defenses available.  Defendant reserves its right to assert additional defenses.

## PRAYER FOR RELIEF

Responding to Plaintiff's Prayer for Relief, Defendant prays for judgment against Plaintiff as follows:

1.     That Plaintiff take nothing by its Complaint.

2.     That Plaintiff's Complaint be dismissed with prejudice.

3.     For judgment in favor of Defendant and against Plaintiff on each of the claims for relief alleged in Plaintiff's Complaint.

4.     That Defendant recover its reasonable attorney's fees and costs associated with defending Plaintiff's Complaint under federal and state law; and

5.     For such other, further and/or different relief as may be deemed just and proper.

## COUNTERCLAIMS

Counterclaimant Oregon Brewing Company ("OBC") brings these Counterclaims against Counterdefendant Excelled Sheepskin & Leather Coat Corp. ("Excelled"), and alleges as follows:

1.     OBC is an Oregon corporation.

2.     Excelled is a New Jersey corporation.

## JURISDICTION AND VENUE

3.     This is an action for trademark infringement, unfair competition, false designation of origin and trademark cancellation under the Lanham Act, 15 U.S.C. §§ 1051, et seq. and trademark infringement and breach of contract under common law.

4.     The Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. § 1331 and § 1338(a).  The Court has supplemental jurisdiction over these Counterclaims under 28 U.S.C. § 1367.

5.     The Court has personal jurisdiction over Excelled and venue is proper under 28 U.S.C. § 1391.

## FACTS GIVING RISE TO COUNTERCLAIMS

### I.     OBC AND ITS ROGUE-BRANDED PRODUCTS AND SERVICES

6.     OBC was founded in 1988.  OBC is among the most famous craft breweries in the United States.  Over the years, OBC has earned hundreds of awards and medals for its beers and has been featured in widely circulated publications such as *The New York Times*, *Details* magazine, *The Washington Post*, and *GQ* magazine.

7.     Continuously since at least as early as 1989, OBC has sold alcohol beverages and clothing bearing the trademark ROGUE in United States commerce.

8.     OBC has developed an irreverent and bold style, which is symbolized by its ROGUE trademark.  OBC has an extremely loyal following of customers throughout the United States.  OBC's fan base has long been known as the "Rogue Nation."  OBC has been using the mark ROGUE NATION for over ten years.

9.     By at least as early as 1998, OBC's ROGUE-branded clothing was being advertised, distributed and sold throughout the United States, including via the internet, at OBC's

restaurants, at major retail outlets, such as Fred Meyer, at festivals and community events, via mail order, via telephone order and via its distributors.

10.     By at least as early as 1998, many thousands of units of OBC's ROGUE-branded clothing products had been distributed or sold to members of the public throughout the United States in a variety of different trade channels.

11.     By at least as early as 1998, OBC had received many thousands of dollars from ROGUE-branded clothing.

12.     By at least as early as 1998, OBC's ROGUE-branded clothing products had been advertised and promoted throughout the United States.

13.     By at least as early as 1998, a substantial percentage of consumers either who had purchased ROGUE-branded clothing or seen advertisements for ROGUE-branded clothing shopped in retail outlets for clothing.

14.     OBC's trademark ROGUE as used on clothing does not immediately describe an attribute or characteristic of the clothing and thus is an "inherently distinctive" and strong trademark.

15.     On account of the foregoing, OBC owns common law trademark rights in the mark ROGUE for clothing and first acquired those rights at least as early as 1989.

16.     On account of the foregoing, by at least as early as 1998, OBC owned common law trademark rights in the mark ROGUE for clothing in every geographic region in the United States.

17.     On account of the foregoing, by at least as early as 1998, OBC owned common law trademark rights in the mark ROGUE for clothing in all channels of trade through which clothing is ordinarily delivered to customers, including in retail channels.

## II.   Prior Trademark Conflicts Between OBC and Excelled

18.   On August 24, 2005, OBC filed a trademark application in the United States Patent and Trademark Office for ROGUE for clothing.  OBC alleged a date of first use of the mark ROGUE for clothing in commerce of 1989.

19.   On March 27, 2006, the Trademark Office suspended OBC's trademark application based on two prior-filed applications for ROGUE for clothing – one owned by Chinook and one owned by Excelled.

20.   Chinook Trading Company filed a trademark application for ROGUE on August 20, 2004.  OBC could defeat Chinook's trademark application because OBC had been continuously using the ROGUE trademark on clothing in United States commerce since long before Chinook filed its trademark application – and the parties' marks and applied-for goods were virtually identical such that confusion was likely.  *See generally* 15 U.S.C. § 1052(d) ("No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature **unless** . . . . (d) [c]onsists of or comprises a mark which so resembles . . . a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." (emphasis added).)

21.   Excelled filed a trademark application for ROGUE for clothing on November 15, 2004.  OBC could defeat Excelled's trademark application because OBC had been continuously using the ROGUE trademark on clothing in United States commerce since 1989 – long before any use by Excelled of the mark in commerce and the parties' marks and applied-for goods were sufficiently similar such that confusion was likely.  *See generally* 15 U.S.C. § 1052(d).

22.     On August 3, 2006, OBC filed notice of opposition in the Trademark Trial and Appeal Board to Chinook's trademark application for ROGUE for clothing.

23.     OBC could not file a notice of opposition to Excelled's trademark application for ROGUE, because in January 2006, the Trademark Office suspended Excelled's application for ROGUE based on Chinook's prior-filed application for ROGUE.

24.     On August 29, 2006, OBC filed notice of opposition to an application owned by Rogue Outdoor Brands, LLC ("ROB") for the mark ROGUE for footwear.  ROB's application for ROGUE for footwear had been filed on September 13, 2005 – after OBC's August 24, 2005 trademark application for ROGUE for clothing (¶18, *supra*).  OBC could defeat ROB's trademark application because OBC had been continuously using the ROGUE trademark on clothing in United States commerce since 1989 – before ROB used the mark in commerce.  *See generally* 15 U.S.C. § 1052(d).

25.     Excelled claimed to have obtained, by way of assignment, the applications for ROGUE for clothing and footwear, filed by Chinook and ROB.  Excelled also claimed to have licensed back to ROB use of the mark ROGUE for footwear.

26.     Following OBC's filing in August 2006 of the notices of opposition, OBC, Excelled and ROB entered into negotiations regarding their uses and applications for ROGUE for clothing and footwear.

**III.    The 2007 Settlement Agreement**

27.     In April 2007, OBC, Excelled and ROB entered into a Settlement Agreement, which is attached as Exhibit A.  Pursuant to the Settlement Agreement, the Trademark Trial and Appeal Board dismissed, without prejudice, OBC's August 2006 notices of opposition.

28.     The 2007 Settlement Agreement provided that: "Excelled and ROB hereby consent to the use of ROGUE in the U.S. by OBC for clothing, but excluding jackets, coats, skirts and footwear." (Ex. A at __.)

29.     The 2007 Agreement allowed OBC to sell ROGUE-branded clothing in any channel of trade throughout the United States, because at the time the Settlement Agreement was executed, OBC had been selling ROGUE-branded clothing in all channels of trade, including retail channels, for over ten years.  During the settlement negotiations leading up to the 2007 Settlement Agreement, Excelled proposed that the parties limit their respective uses to particular trade channels.  OBC expressly rejected that proposal.  OBC refused to stop using the ROGUE mark for clothing in any channel of trade because it had been continuously using the ROGUE mark for clothing in all channels of trade **long before** Excelled or ROB first commenced use of the ROGUE mark.  Thus, instead of limitations on channels of trade, the parties agreed to limitations on the types clothing products, e.g., coat, pants, etc., that each could sell under the ROGUE mark.

30.     OBC never altered the channels of trade in which it was selling ROGUE-branded clothing after the execution of the Settlement Agreement, including in retail channels of trade.

31.     The 2007 Settlement Agreement provided that: "OBC consents to the use of ROGUE for clothing in the U.S. by Excelled, but **limited to** jackets, coats, shirts and skirts." (*Id.*, § 2.1 (emphasis added).)  The 2007 Settlement Agreement limited Excelled's use of the mark ROGUE for clothing to "jackets, coats, shirts and skirts." (*Id.* § 2.1.)  OBC consented to Excelled's use of the mark ROGUE at that time on that narrow range of goods in a compromise of disputed claims to resolve potentially time consuming and costly litigation.  The parties agreed to a limitation on their respective goods in lieu of a restriction on the channels of trade,

because OBC would **not** agree to a channels of trade restriction because it was senior in time to Excelled in all channels of trade, including retail and it refused to stop selling in those channels of trade.

32.     Beginning after the execution of the Settlement Agreement in April 2007, Excelled used and continues to use the mark ROGUE on clothing items **other than** jackets, coats, shirts, skirts and footwear, including without limitation, on vests, pants, blouses, dresses, hosiery, hats, gloves, and belts.  OBC **never consented** to Excelled's use of ROGUE or ROGUE-formative marks on vests, pants, blouses, dresses, hosiery, hats, gloves, and belts and objects to such use because it is likely to confuse consumers and others in the trade into believing that OBC is connected with Excelled's goods.

33.     The 2007 Settlement Agreement provided that OBC consents to the registration of ROGUE in the U.S. by Excelled for "men's women's and children's clothing, namely jackets, coats and skirts." (*Id.*, § 3.2.)  The 2007 Settlement Agreement required that Excelled amend its pending trademark applications for ROGUE to conform with this restriction.  (*Id.*, § 3.2.)  The 2007 Settlement Agreement required Excelled to use this restricted identification of goods in any future trademark application for ROGUE or ROGUE-formative marks.  (*Id.*, § 3.3.)

34.     Following the execution of the 2007 Settlement Agreement and continuing today, and despite repeated notices by OBC, Excelled refuses to amend the description of goods in its federal ROGUE trademarks in violation of § 3.2 of the 2007 Settlement Agreement.

35.     Following the execution of the 2007 Agreement and continuing today, and despite repeated notices by OBC, Excelled files and prosecutes federal trademark applications for ROGUE and ROGUE-formative marks that violate § 3.3 of the 2007 Settlement Agreement because they claim rights to goods other than jackets, coats and skirts.

36.     By way of limited example, on December 28, 2009, Excelled filed a trademark application for ROGUE STATE for "men's, ladies' and children's clothing, namely coats, jackets, **vests**, **shirts** and **pants**" and in 2009 commenced use of the ROGUE STATE mark for those goods.  On September 13, 2010, Excelled filed a trademark applications for ROGUE OUTLAW and ROGUE RUGGED for, among other things, "clothing, namely, coats, jackets, **vests, shirts, pants, blouses**, skirts, **dresses; hosiery; hats; gloves; belts**; and footwear."  OBC never consented to Excelled's use, attempted registration or registration of ROGUE or ROGUE-formative marks on vests, shirts, pants, blouses, dresses, hosiery, hats, gloves and belts and objects to such use and attempted registration, because it is likely to confuse consumers and others in the trade that OBC is connected with Excelled's goods.

37.     OBC's trademark application for ROGUE for clothing was subsequently registered (Reg. No. 3,365,653).  OBC's trademark registration for ROGUE contains the following identification of goods "clothing, namely, t-shirts, sweatshirts, polo shirts, turtlenecks, aprons, hats, and not including jackets, coats and skirts, **sold primarily** in the trademark owner's brew pubs and web site, as compliments to and in promotion of the trademark owner's brewing and beverage business."  (Emphasis added.)

38.     OBC's identification of goods resulted from dealings with the Trademark Examining Attorney at the Trademark Office in the several months following the execution of the 2007 Settlement Agreement.  Pursuant to the 2007 Settlement Agreement, OBC attempted to amend the description of goods in its trademark application to "clothing, namely, t-shirts, sweatshirts, polo shirts, turtlenecks, aprons, hats, and not including jackets, coats and skirts." OBC's attempted amendment -- required by the 2007 Settlement Agreement -- did not contain any limitation on the channels of trade in which the goods were sold.  However, the Examining

Attorney at the Trademark Office refused to accept the proposed amended identification based on his belief that even with the amended identification of goods, there would be a likelihood of confusion with Excelled's prior-filed trademark application for ROGUE.

39.     Rather than incur the time, energy and expense of an uncertain appeal to the Trademark Trial and Appeal Board of the Examining Attorney's decision in this regard, OBC restricted its registered (as opposed to its already-existing common law) rights in the trademark ROGUE to be for certain clothing items "sold primarily in the trademark owner's brew pubs and web site, as compliments to and in promotion of the trademark owner's brewing and beverage business." OBC's description of goods in its trademark registration does not narrow or otherwise limit the scope of OBC's **then-existing** common law trademark rights which arise, and the contours of which are determined by, OBC's actual use of the mark in commerce on the goods.

## IV.     The Oregon Lawsuit

40.     In 2011, OBC filed a lawsuit against Excelled in the state court of Oregon seeking specific performance of the 2007 Settlement Agreement.  In response, Excelled claimed that in December 2010, OBC terminated the 2007 Settlement Agreement.  Excelled's termination argument was based on written demands by OBC to Excelled that Excelled comply with the terms of the 2007 Settlement Agreement, including by amending its trademark applications as required by §§ 3.2 and 3.3 of the 2007 Settlement Agreement.

41.     During the pendency of the Oregon case, Excelled commenced this action in this Court.  In its Complaint, Excelled did not reference the then-pending Oregon action.

42.     After Excelled commenced this action, the Oregon court ruled that OBC terminated the 2007 Settlement Agreement and that the 2007 Settlement Agreement was not in

effect and did not bind the parties since late 2010.  OBC has appealed from the Oregon court's order.

43.     Unless and until the Oregon court's order is reversed on appeal, the 2007 Settlement Agreement is no longer in effect and has not been so since late 2010.

## V.     Excelled's Infringement Of OBC's ROGUE Trademarks

44.     OBC owns common law trademarks rights to ROGUE for clothing.  (*See supra* ¶¶ 6-17.)  OBC owns United States Trademark Registration No. 3,365,653 for ROGUE for clothing.

45.     After OBC established trademark rights in ROGUE and ROGUE-formative marks for clothing, Excelled commenced use of the marks ROGUE, ROGUE STATE, and other ROGUE-formative marks on clothing products and footwear, including without limitation, jackets, coats, skirts, footwear, shirts, vests, pants, blouses, dresses, hosiery, hats, gloves, and belts and footwear.

46.     OBC and Excelled are using ROGUE and ROGUE-formative marks that are identical or substantially similar in sight, sound and meaning.

47.     OBC and Excelled are using ROGUE and ROGUE-formative marks on substantially similar or identical clothing products.

48.     OBC and Excelled advertise their ROGUE-branded clothing over the internet and through print.

49.     OBC and Excelled target identical or substantially similar customers with their ROGUE-branded clothing.

50.     OBC and Excelled sell their ROGUE-branded clothing products in the same channels of trade.  OBC continuously sold and distributed ROGUE-branded clothing in retail channels of trade before Excelled first used ROGUE for clothing in retail channels of trade.

OBC continuously sold and distributed ROGUE-branded clothing over the internet and via telephone mail order before Excelled's first use of the ROGUE mark for clothing on the internet or available via mail order.

51.    Beginning in 2009, Excelled commenced use and/or attempted registration of a family of ROGUE-formative marks with the intent of trading off on the goodwill and reputation of OBC and deceiving consumers into believing that Excelled's clothing products branded with those marks, as well as its then-existing ROGUE marks, are connected with or put our by OBC. Specifically, in 2009, Excelled sought registration and commenced use of the mark ROGUE STATE which is likely to be understood by consumers as referring to OBC and OBC's image and reputation in the marketplace as a "rogue" and OBC's well-known "Rogue Nation" fan base, because "state" is a synonym for "nation." In December 2009 and September 2010, Excelled filed trademark applications for ROGUE RAW, ROGUE OUTLAW and ROGUE RUGGED for clothing products and claimed earlier this year to the Trademark Office that it was actively attempting to bring products to market under those ROGUE-formative marks. Clothing products bearing those ROGUE-formative marks are likely to be understood by consumers to come from OBC or be connected with OBC, because of OBC's well-known "irreverent" image in the marketplace as a "rogue" and OBC's "Rogue Nation." Excelled's adoption, use and/or attempted registration of new ROGUE-formative marks for clothing products, such as ROGUE STATE, ROGUE RAW, ROGUE OUTLAW, and ROGUE RUGGED cause a likelihood that actual and potential consumers and others in the trade will believe that Excelled's clothing products branded with those marks are connected with or manufactured or licensed by OBC, as well as, exacerbate the likelihood of confusion arising from Excelled's use of previously-existing ROGUE and ROGUE-formative marks. Excelled's recent decision to use and/or attempt to

register ROGUE STATE, ROGUE RAW, ROGUE OUTLAW, and ROGUE RUGGED has

tainted Excelled's other ROGUE-formative marks and has increased the likelihood of that

consumers will believe that those other ROGUE and ROGUE-formative marks are connected

with OBC.

52.     Beginning sometime after April 2007, Excelled commenced use of the mark

ROGUE and ROGUE-formative marks on vests, pants, blouses, dresses, hosiery, hats, gloves,

and belts, as well as other clothing products.  OBC never consented to Excelled's use of a

ROGUE or ROGUE-formative mark on such products.

53.     Excelled's unauthorized use, registration and/or attempted registration of ROGUE

and marks containing the word ROGUE, such as ROGUE STATE, ROGUE RAW, ROGUE

OUTLAW and ROGUE RUGGED, for clothing, including without limitation, jackets, coats,

skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, gloves, belts and footwear, is

likely to cause consumers and others in the trade to erroneously believe that OBC approved of,

endorsed, licensed, sponsored or manufactured Excelled's ROGUE-branded clothing products.

**VI.     Excelled's Breaches Of The Cross-License Agreement With OBC**

54.     In June 2007, OBC and Chinook entered into a "Cross-License Agreement." (*See*

Ex. B hereto.)  The Cross-License between OBC and Chinook provided Chinook with a license

to use the mark ROGUE in the United States on "clothing." (*See id.*, § 1.1.)

55.     On or about September 24, 2010, Excelled acquired all of the rights and

obligations of Chinook under the Cross-License Agreement between OBC and Chinook.  (*See*Ex.

C hereto ("Trademark Transfer Agreement").)

56.     The Trademark Transfer Agreement between Excelled and Chinook provides in

pertinent part:

> "Whereas Chinook entered into a Cross-License
> Agreement with Oregon Brewing Company relating in part
> to rights in trademarks containing the word ROGUE ('the
> Cross-License' Agreement'.
>
> \*       \*       \*
>
> Whereas **Excelled also wishes to succeed to and acquire**
> **all of Chinook's rights and obligations under the Cross-**
> **License Agreement**."  (*Id.* at 1. (emphasis added).)

57.     Exhibit B to the Trademark Transfer Agreement entitled "Assignment" states in

pertinent part:

> "Whereas, Excelled . . . **is desirous of acquiring all of**
> **Chinook's rights and obligations in, to and under the**
> **Cross License Agreement**."  (Exhibit B to Trademark
> Transfer Agreement.  (Emphasis added).)

58.     Pursuant to the Trademark Transfer Agreement, on or about September 24, 2010,

Excelled became a trademark licensee of the trademark ROGUE from OBC on clothing products

in the United States.  (Ex. B.)  Any independent rights that Excelled may have owned to the

mark ROGUE for clothing which were superior in time to OBC's rights before September 24,

2010 were extinguished under the "merger rule" as applied in *Dress for Success Worldwide v.*

*Dress 4 Success*, 589 F. Supp. 2d 351, 359, 362 (S.D.N.Y. 2008) (merger rule extinguishes any

independent, superior trademark rights the trademark licensee may have had as compared to

trademark licensor), *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 923

(C.D. Ill. 2000) ("A licensee's prior claims of any independent rights to a trademark are lost, or merged into the license, when he accepts his position as a licensee. . . .") and other cases.

59.     Following the execution of the Trademark Transfer Agreement and in violation of the Cross License Agreement which it assumed with OBC, Excelled used the licensed ROGUE trademark on clothing products which OBC objects to, including on coats, jackets, vests, shirts, pants, blouses, skirts, dresses, hosiery, hats, gloves, belts and footwear, and which do not comply with OBC's quality standards.

60.     Beginning on September 24, 2010, Excelled has been using the mark ROGUE (alone and in combination with other words) on clothing products, including jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, gloves, and belts, which OBC objects to and which do not meet OBC's quality standards in violation of the Cross License Agreement.  Excelled's unauthorized use of OBC's ROGUE trademark on clothing items, including without limitation, jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, gloves, and belts, which OBC has not authorized and/or which do not comply with OBC's quality standards is likely to cause consumers and others in the trade to believe erroneously that OBC approved, sponsored, licensed, or endorsed such products or manufactured such products.  Excelled's use of the ROGUE mark beginning in September 2010 on clothing products which OBC objects to and which do not meet OBC's quality standards constitutes "a use by a licensee which is outside the scope of the license [which is] is both trademark infringement and a breach of contract."  4 J. Thomas McCarthy, *McCarthy on Trademark & Unfair Competition* § 25:30 (4th ed. 2012).

## COUNT I

**TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1114)**

61.     OBC re-alleges and incorporates the allegations in Paragraphs 1-60 above as though set forth herein.

62.     OBC owns a federally registered mark (Reg. No. 3,365,653) for ROGUE for clothing products.

63.     Excelled is engaged in the unauthorized use and/or attempted registration of the mark ROGUE and formatives thereof, including without limitation, ROGUE STATE, ROGUE RUGGED, ROGUE OUTLAW and ROGUE RAW, in connection with the sale of clothing products and footwear, including without limitation, jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, gloves, and belts.

64.     Excelled's unauthorized use of OBC's ROGUE mark constitutes trademark infringement, unfair competition and false designation of origin in violation of 15 U.S.C. § 1114, because such conduct is likely to cause confusion, mistake or deception as to source, origin, affiliation, connection or association of Excelled's products.  Consumers and others in the trade are likely to erroneously believe that OBC approved of, endorsed, sponsored, licensed or manufactured Excelled's ROGUE-branded products, including without limitation, Excelled's jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, and gloves all of which are branded with a ROGUE-formative mark.

65.     Excelled's acts have caused OBC to lose control over the reputation and goodwill associated with OBC's ROGUE marks.

66.     OBC has suffered damages and Excelled has obtained profits and/or unjust enrichment as a result of its wrongful conduct.

67.    Excelled's acts irreparably injure OBC's business, reputation and goodwill. Unless Excelled is enjoined from its wrongful conduct, OBC will continue to suffer irreparable injury and harm, for which OBC has no adequate remedy at law.

## COUNT II

### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT (15 U.S.C. § 1125)

68.    OBC re-alleges and incorporates the allegations in Paragraphs 1-67 above as though set forth herein.

69.    OBC owns a common law marks for ROGUE for clothing products.

70.    Excelled is engaged in the unauthorized use and/or the attempted registration of the mark ROGUE and formatives thereof, including without limitation, ROGUE STATE, ROGUE RUGGED, ROGUE OUTLAW and ROGUE RAW, in connection with the sale of clothing products and footwear, including without limitation, jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses; hosiery; hats; gloves; and belts.

71.    Excelled's unauthorized use and/or attempted registration of OBC's ROGUE marks (and formatives thereof, including without limitation, ROGUE STATE, ROGUE RUGGED, ROGUE OUTLAW and ROGUE RAW) in connection with the sale of clothing products and footwear, including without limitation, jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, gloves, and belts, constitutes trademark infringement, unfair competition and false designation of origin in violation of 15 U.S.C. § 1125, because such conduct is likely to cause confusion, mistake or deception as to source, origin, affiliation, connection or association of Excelled's products.  Consumers and others in the trade are likely to erroneously believe that OBC approved of, endorsed, sponsored, licensed or manufactured Excelled's ROGUE-branded clothing products.

## COUNT III

### TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER COMMON LAW

72.     OBC re-alleges and incorporates the allegations in Paragraphs 1-71 above as though set forth herein.

73.     Excelled's unauthorized use of ROGUE (and formatives thereof including without limitation, ROGUE STATE, ROGUE RUGGED, ROGUE OUTLAW and ROGUE RAW) on clothing products and footwear, including without limitation, jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, and gloves, constitutes trademark infringement, unfair competition, and false designation of origin, in violation of New York common law, Oregon common law, California common law and New York statutory law, because it is likely to cause confusion, mistake or deception as to source, origin, affiliation, connection or association of Excelled's goods.  N.Y. Gen. Bus. Law § 349.  Consumers and others in the trade are likely to erroneously believe that OBC approved of, endorsed, sponsored, licensed or manufactured Excelled's ROGUE-branded products, including without limitation, Excelled's jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, and gloves all of which are branded with a ROGUE-formative mark.

74.     Excelled's acts have caused OBC to lose control over the reputation and goodwill associated with OBC's ROGUE marks.

75.     OBC has suffered damages and Excelled has obtained profits and/or unjust enrichment as a result of Excelled's wrongful conduct.

76.     Excelled's acts irreparably injure OBC's business, reputation and goodwill. Unless Excelled is enjoined from its wrongful conduct, OBC will continue to suffer irreparable injury and harm, for which OBC has no adequate remedy at law.

- 27 -

## COUNT IV

## TRADEMARK CANCELLATION

77.     OBC re-alleges and incorporates the allegations in Paragraphs 1-76 above as though set forth herein.

78.     Excelled's Trademark Registration Nos. 3,346,559; 3,260,143; 2,790,074 and 3,945,523 for ROGUE marks for clothing products and footwear should be cancelled because Excelled is not the owner of the trademark ROGUE for clothing products or footwear, *see* 15 U.S.C. § 1051, and those marks are confusingly similar to OBC's trademark ROGUE for clothing, 15 U.S.C. § 1052(d).  *See generally* 15 U.S.C. § 1119.

79.     OBC is likely to be damaged by Excelled's maintenance of the foregoing registrations.

## COUNT V

## BREACH OF CONTRACT

80.     OBC re-alleges and incorporates the allegations in Paragraphs 1-79 above as though set forth herein.

81.     Excelled became OBC's trademark licensee for clothing in 2010 by way of the Trademark Transfer Agreement attached hereto as Exhibit C.  Excelled is engaged in the use of the mark ROGUE on clothing products and footwear, including without limitation, jackets, coats, skirts, footwear, vests, pants, blouses, shirts, dresses, hosiery, hats, and gloves that OBC does not approve and which do not meet OBC's quality standards in breach of the Cross-License Agreement.

82.     Excelled's acts have caused OBC to lose control over the reputation and goodwill associated with OBC's ROGUE marks.

83.     OBC has suffered damages and Excelled has obtained profits and/or unjust enrichment as a result of Excelled's wrongful conduct.

84.     Excelled's acts irreparably injure OBC's business, reputation and goodwill. Unless Excelled is enjoined from its wrongful conduct, OBC will continue to suffer irreparable injury and harm, for which OBC has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing allegations, OBC prays for judgment against Excelled as follows:

1.     That this Court enter judgment in favor of OBC and against Excelled on all claims for relief alleged herein.

2.     That this Court issue a preliminary and permanent injunction:

a.     enjoining Excelled, its employees, owners, agents, officers, directors, attorneys, representatives, affiliates, subsidiaries, successors and assigns, and all those in active concert or participation with them or having knowledge of the causes of action, from using OBC's ROGUE mark on clothing and footwear, alone or in combination with any other word(s), term(s), designation(s), mark(s), and/or design(s), as well as all similar marks, *see* 15 U.S.C. § 1116;

b.     cancelling Trademark Registration Nos. 3,346,559; 3,260,143; 2,790,074 and 3,945,523 and ordering Excelled to abandon with prejudice Application Serial Nos. 7770622; 77901540; 85128089; 85128066 and any other application that contains ROGUE, *see* 15 U.S.C. §§ 1116, 1119;

c.     requiring Excelled to deliver up for destruction all inventory, literature, signs, labels, prints, packages, wrappers, containers, advertising materials,

- 29 -

stationery, and other items in its possession, custody or control that use ROGUE on or in connection with the offering for sale or sale of clothing products or footwear, *see* 15 U.S.C. § 1118; and

d.    requiring Excelled to file with the Court and serve on OBC, within thirty (30) days after entry of an injunction, a report in writing under oath setting forth in detail the manner in which it has complied with the Court's injunction, *see* 15 U.S.C. § 1116.

3.    That this Court grant monetary relief to OBC in the form of:

a.    treble an accounting of all profits derived by Excelled from the acts complained of herein under 15 U.S.C. § 1117 and any other applicable statute or at common law, according to proof at trial;

b.    treble general, special and/or actual damages proximately caused by Excelled's acts complained of herein, along with any other damages allowable, under 15 U.S.C. § 1117 and any other applicable statute or at common law, according to proof at trial;

c.    costs and reasonable attorneys' fees under 15 U.S.C. § 1117(a) and New York common and statutory law; and

d.    punitive or exemplary damages, as permitted by New York law.

4.    That this Court grant OBC such other and further relief, in law or in equity, as it should deem just and proper.

## JURY DEMAND

OBC respectfully demands a trial by jury on all Counterclaims and issues so triable.


Dated: July 27, 2012                    McDERMOTT WILL & EMERY LLP

                                        By: /s/ _____
                                              Monica S. Asher

                                        340 Madison Avenue
                                        New York, New York  10017
                                        Telephone:  (212) 547-5400
                                        Facsimile:  (212) 547-5444
                                        Email:  masher@mwe.com

                                        John J. Dabney (admitted *pro hac vice*)
                                        Mark H. Churchill (admitted *pro hac vice*)
                                        Rita Weeks (admitted *pro hac vice*)
                                        McDermott Will & Emery LLP
                                        600 13th Street, N.W.
                                        Washington, D.C.  20005-3096
                                        Telephone: (202) 756-8000
                                        Facsimile: (202) 756-8087
                                        Email: jdabney@mwe.com
                                                mchurchill@mwe.com
                                                rweeks@mwe.com

                                        *Attorneys for Oregon Brewing Company*

DM_US 37119750-1.055897.0013