UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

EXCELLED SHEEPSKIN & LEATHER COAT
CORP.,

Plaintiff,

v.

OREGON BREWING COMPANY

Defendant.

**Civil Action No. 12 – CV – 1416
(GBD)**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN
ORDER GRANTING SUMMARY JUDGMENT ON ALL COUNTS IN PLAINTIFF'S
COMPLAINT AND COUNTERCLAIM AND DISMISSING ALL COUNTS OF
DEFENDANT'S COUNTERCLAIM**

Bernice K. Leber (BL-1285)
1675 Broadway
New York, New York 10019
(212) 484-3930

and

Michael A. Grow
Alec P. Rosenberg
Ross Q. Panko
Arent Fox LLP
1717 K Street, NW
Washington, DC 20036
(202) 857-6389

*Attorneys for Plaintiff
Excelled Sheepskin and Leather Coat Corp.*

1

## Table of Contents

Page

I.  PRELIMINARY STATEMENT AND INTRODUCTION ............................................. 3

II.  FACTUAL BACKGROUND ........................................................................ 5

    A.  Excelled's ROGUE Marks Are Inherently Distinctive, Strong, and Have Been the Subject of Widespread Advertising, Promotion ..................................... 5

    B.  OBC's Limited Use of ROGUE on Promotional Products and its Representations Under Penalty of Perjury to the United States Patent and Trademark Office ............................................................................. 6

    C.  The Oregon State Court Litigation ..................................................... 9

    D.  The Cross-License Agreement Between OBC and Chinook Trading Company ........................................................................................ 9

    E.  OBC's Recent Expansion Into Excelled's Channels of Trade .............................. 9

    F.  OBC Expanded Into Excelled's Trade Channels in An Effort to Drive Up the Value of the Company and Attract a Potential Buyer ..................................... 10

    G.  OBC's Answer and Its Bad Faith Filing of a Baseless Counterclaim Against Excelled ............................................................................. 10

III.  ARGUMENT ........................................................................................ 12

    A.  EXCELLED IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT .............. 12

    B.  EXCELLED IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS COUNTERFEITING, INFRINGEMENT, UNFAIR COMPETITION, AND UNFAIR TRADE PRACTICES CLAIMS .................. 13

        1.  OBC's Use of the Identical Mark "ROGUE" for Clothing Sold in Excelled's Trade Channels Constitutes Counterfeiting Under the Lanham Act ......................................................................... 13

            a.  Excelled Has Proved the Elements of its Counterfeiting Claim ................................................................. 13

        2.  Excelled is Entitled To Summary Judgment On Its Federal and Common Law Claims for Trademark Counterfeiting, Infringement, and Unfair Competition ..................................................... 14

            a.  Excelled Owns Prior Rights in the ROGUE Marks for Clothing Sold in Department Store and Clothing Store Trade Channels ..................................................... 14

            b.  OBC's Use of the Mark ROGUE on Clothing Sold in Excelled's Trade Channels Creates a Likelihood of Confusion ..................................................... 16

AFDOCS/10594209.3

**Table of Contents**
(continued)

Page

3.      Excelled is Entitled to Summary Judgment on Its Claim for Unfair Trade  Practices Under the Statutory Laws of New York ...................... 19

C.      EXCELLED IS ENTITLED TO SUMMARY JUDGMENT DISMISSING ALL OF OBC'S COUNTERCLAIMS ............................................................. 20

1.      The Court Should Dismiss All of OBC's Trademark Infringement, False Designation of Origin, and Unfair Competition Claims ............... 20

a.      OBC Cannot Establish That it Owns Prior Rights in Excelled's Department Store and Clothing Store Trade Channels........................................................................................... 20

b.      OBC Cannot Establish Likelihood of Confusion Because Its Arguments Are Contrary To the Undisputed Facts ............... 21

2.      The Court Should Dismiss OBC's Trademark Cancellation Claim ........ 23

3.      Excelled is Entitled to Summary Judgment Dismissing OBC's Trademark and Unfair Competition Claims Based on Its Affirmative Defenses ................................................................................. 23

a.      OBC's Counterclaims Are Barred by the Statue of Limitations ................................................................................ 23

b.      OBC's Counterclaims Are Barred By Laches ............................. 24

c.      OBC's Counterclaims Are Barred by Acquiescence .................. 25

d.      OBC's Counterclaims Are Barred By Judicial Estoppel ............. 25

4.      Excelled Is Entitled to Summary Judgment on OBC's Breach of Contract Claim ......................................................................................... 26

D.      EXCELLED IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR DECLARATORY JUDGMENT ................................ 27

E.      EXCELLED REQUESTS INJUNCTIVE RELIEF, DAMAGES AND ATTORNEYS FEES ................................................................................. 28

IV.   CONCLUSION.................................................................................................. 29

## Table of Authorities

**Page(s)**

CASES

*Am. Dietaids Co. v. Plus Prods.*,
   412 F. Supp. 691 (S.D.N.Y.), *aff'd*, 551 F.2d 299 (2d Cir. 1976)............................22

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................10

*Burberry Ltd. v. Euro Moda, Inc.*,
   No. 08 Civ 5781, 2009 WL 1675080 (S.D.N.Y. June 10, 2009)............................17

*Chanel, Inc. v. Gardner*,
   No. 07 Civ. 6679 (GBD)(MHD), 2011 WL 204911 (S.D.N.Y. Jan. 21, 2011)....................25

*Charles Atlas, Ltd. v. DC Comics, Inc.*,
   112 F. Supp. 2d 330 (S.D.N.Y. 2000).....................................................21

*Chaveriat v. Williams Pipe Line Co.*,
   11 F.3d 1420 (7th Cir. 1993) ..............................................................23

*Coach Inc., v. Allen*,
   No. 11-CV-3590, 2012 WL 2952890 (S.D.N.Y. July 19, 2012)............................25

*Conopco, Inc. v. Campbell Soup Co.*,
   95 F.3d 187 (2d Cir. 1996)...........................................................21, 22

*Diamond Supply Co. v. Prudential Paper Prods.Co.*,
   589 F. Supp. 470 (S.D.N.Y. 1984) ........................................................26

*Edison Bros. Stores, Inc. v. Cosmair, Inc.*,
   651 F. Supp. 1547 (S.D.N.Y. 1987)........................................................16

*Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*,
   673 F. Supp. 1238 (S.D.N.Y. 1987)........................................................15

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,
   493 F.Supp.2d 545 (E.D.N.Y. 2007) ......................................................12

*GTFM, Inc. v. Solid Clothing, Inc.*,
   215 F. Supp. 2d 273 (S.D.N.Y. 2002)......................................................17

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
   286 F. Supp. 2d 284 (S.D.N.Y. 2003)......................................................11

*In re Adelphia Recovery Trust*,
   634 F.3d 678 (2d Cir. 2011)...............................................................23

**Table of Authorities**
(continued)

*Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.,*
    735 F.3d 735 (7th Cir. 2013) ........................................................................15

*Lang v. Ret. Living Publ'g. Co.,*
    949 F.2d 576 (2d Cir. 1991) ..........................................................................16

*Lever Bros. Co. v. Am. Bakeries Co.,*
    693 F.2d 251 (2d Cir. 1982) ..........................................................................16

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.,*
    No. 03 C 4986, 2004 WL 2534378 ................................................................26

*Mennen Co. v. Gillette Co.,*
    565 F. Supp. 648 (S.D.N.Y. 1983), *aff'd,* 742 F.2d 1437 (2d Cir. 1984) ................26

*Morehouse Mfg. Corp. v. J. Strickland & Co.,*
    407 F. 2d 881 (C.C.P.A. 1969) .................................................................20, 21

*Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.,*
    182 F.3d 133 (2d Cir. 1999) ..........................................................................12

*Motown Prods., Inc. v. Cacomm, Inc.,*
    849 F.2d 781 (2d Cir. 1988) ..........................................................................26

*NLRB v. Consol. Bus Transit, Inc.,*
    577 F.3d 467 (2d Cir. 2009) ..........................................................................14

*Paco Sport, Ltd. v. Paco Rabanne Parfums,*
    86 F. Supp. 2d 305 (S.D.N.Y.), *aff'd sub nom. Paco Sport, Ltd. v. Paco Rabanne Perfumes,* 234 F.3d 1262, 2000 WL 1721126 (2d Cir. 2000) ....................14

*Philip Morris USA, Inc. v. Felizarda,*
    No.. 03 Civ. 5891, 2004 WL 1375277 (S.D.N.Y. June 18, 2004) .....................26

*Philip Morris USA, Inc. v. Jackson,*
    826 F. Supp. 2d 448 (E.D.N.Y. 2011) ...........................................................11

*Philip Morris USA, Inc. v. Marlboro Express,*
    No. CV-03-1161, 2005 WL 2076921 (E.D.N.Y. Aug. 26, 2005) .....................11

*Polaroid Corp. v. Polarad Elecs. Corp.,*
    287 F.2d 492 (2d Cir. 1961) .....................................................................14, 16

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.,*
    314 F.3d 62 (2d Cir. 2002) ............................................................................22

*Thomas v. OneWest Bank, FSB,*
    Civ. No. 10–6234–AA, 2011 WL 3585042 (D. Or. Aug. 15, 2011) ................24

2

**Table of Authorities**
(continued)

*Top Tobacco, L.P. v. N. Atl. Operating Co.,*
  No. 06 C 950, 2007 WL 1149220 (N.D. Ill. Apr. 17, 2007)....................................................24

*Trs. Of Columbia Univ. v. Columbia/HCA Healthcare Corp.,*
  964 F. Supp. 733 (S.D.N.Y. 1997) ..........................................................................................22

*Virgin Enters. Ltd. v. Nawab,*
  335 F.3d 141 (2d Cir. 2003)......................................................................................12, 13, 17

**STATUTES**

15 U.S.C. 1117(a) ..................................................................................................................1, 3, 4

15 U.S.C. §§ 1057(c), 1072 ...........................................................................................................11

15 U.S.C. §§ 1064, 1065 ...............................................................................................................20

15 U.S.C. § 1065 .............................................................................................................................4

15 U.S.C. § 1114(1)(b) ..................................................................................................................11

15 U.S.C. § 1117(a) .......................................................................................................................26

15 U.S.C. § 1117(c)(2).................................................................................................................25

15 U.S.C. § 1125(a) .......................................................................................................................12

15 U.S.C. § 1127 ............................................................................................................................11

Section 349(a) of the New York General Business Law .................................................................17

**OTHER AUTHORITIES**

Excelled's "ROGUE" .........................................................................................................5, 6, 7, 8

Fed. R. Civ. P. 56(a) .....................................................................................................................10

Rule 702 of the Federal Rules of Evidence ...................................................................................19

Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ..........................................3

Rule 30(b)(6)...................................................................................................................................9

AFDOCS/10594209.3
AFDOCS/10594209.3

## I.   PRELIMINARY STATEMENT AND INTRODUCTION

This is a quintessential "exceptional case" within the meaning of 15 U.S.C. 1117(a). Accordingly, Plaintiff Excelled Sheepskin & Leather Coat Corp. ("Excelled") moves (a) for an order granting Excelled summary judgment, an award of costs and attorneys' fees, and the maximum amount of statutory damages to compensate it for Oregon Brewing Company's ("OBC's") deliberate acts of counterfeiting and trademark infringement and (b) for an Order dismissing OBC's counterclaims.  OBC has been willing to say and do anything in pursuit of its groundless counterclaims, which directly contradict its prior sworn admissions to the U.S. Patent and Trademark Office ("PTO").  But there is really only one issue here.  Which party owns prior rights in the trademark ROGUE for clothing sold in department store and clothing store trade channels?  As OBC knows and has admitted to the PTO, Excelled owns those rights.

Excelled has been in the clothing business since 1927 and, over the past 14 years, it has built a highly successful business around its family of ROGUE clothing trademarks.  By contrast OBC is a beer company that sells alcohol under ROGUE and other marks.  OBC has sold a few promotional products including t-shirts bearing the mark ROGUE.  Until recently, however, it sold clothing primarily in its own brew pubs and website, or other outlets that sold its beer.

On February 24, 2012, Excelled filed this action after discovering that OBC had began selling counterfeit ROGUE clothing in Nordstrom  and other clothing stores, where Excelled has sold its ROGUE clothing exclusively since January 2000.

Before May 14, 2012, when OBC moved to amend its original Answer to include counterclaims, OBC had never objected to Excelled's use of ROGUE.  To the contrary, in 2007, OBC represented under penalty of perjury to the PTO that Excelled's use of ROGUE on clothing created no likelihood of confusion between its ROGUE mark and Excelled's previously

1

registered ROGUE marks because OBC is a beer company and its ROGUE clothing was not sold in clothing and department stores.  OBC expressly represented to the PTO that its clothing was sold primarily in its own brew pubs and website as complements to and in promotion of its brewing and beverage businesses.  Despite prior sworn admissions, OBC falsely alleged in its counterclaims before this court that OBC had sold products in all trade channels prior to Excelled's first use date of 2000.

Early in this case, the Court expressed skepticism about OBC's ability to prove its counterclaim.  But OBC induced the Court to allow the counterclaim by falsely alleging that it had pre-2000 sales of ROGUE clothing in all retail channels, including Fred Meyer.  The Court's skepticism was well-founded.  The "evidence" obtained from OBC during discovery, at great cost to Excelled, confirms precisely what OBC told the PTO in 2007, namely, that OBC always sold ROGUE clothing merely as a promotional product to promote its beer, and only through its own brew pubs, website, and similar promotional channels.

# REDACTED

Knowing that it had no valid basis for its counterclaims, OBC has employed scorched earth litigation tactics to maximize Excelled's litigation costs and to bully it into giving up its

trademark rights.  OBC has portrayed itself not as a beer company but as a "lifestyle" company, and it claims that because Excelled has added new products to its ROGUE line Excelled is attempting trade on OBC's beer company image.

The parties coexisted peacefully for more than a decade until OBC decided to misappropriate Excelled's rights.  Excelled had made its claim of rights known by filing its first ROGUE clothing trademark applications in April 2000, and it has consistently sold clothing in the same trade channels since that time.  OBC changed the *status quo* in 2011 it when decided in 2011 to sell counterfeit clothing products in Excelled's trade channels.

OBC's bad faith allegations, its misrepresentations of fact in pleadings, and its discovery abuses have greatly injured Excelled, have needlessly prolonged this case, and have caused undue burden, cost, and expense.  There is no dispute as to any material fact and Excelled is entitled to judgment as a matter of law on all of its claims, to an order dismissing all of OBC's claims, and to an award of statutory damages, attorneys' fees, and costs.

## II.    FACTUAL BACKGROUND[1]

### A.    Excelled's ROGUE Marks Are Inherently Distinctive, Strong, and Have Been the Subject of Widespread Advertising, Promotion

Excelled sells clothing and footwear under a family of marks containing the word ROGUE (the "ROGUE Marks").  SUF[2] ¶¶1-5.  Excelled sold "ROGUE" clothing at least as early as 2000, and it filed its first application to register a ROGUE mark with the United States Patent and Trademark Office ("PTO") on April 19, 2000.  *Id.* ¶ 2_.  Since then, the PTO has recognized Excelled's rights in a family of ROGUE Marks by issuing numerous registrations for

---

[1] Excelled's Statement of Undisputed Facts is being filed concurrently with this motion.

[2] "SUF," as used herein, refers to Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1.

AFDOCS/10594209.3
AFDOCS/10594209.3

those marks.[3]  The earliest of these marks is incontestable within the meaning of 15 U.S.C.
§ 1065.

Excelled's ROGUE Marks are inherently distinctive and strong, as demonstrated by its
widespread advertising, promotion, and publicity of its products.  SUF ¶ 4.  There has been
substantial publicity resulting from the celebrities in the motion picture, television, and music
industries who wear  ROGUE products, including Keith Richards, Hugh Jackman, Gerard Butler,
Kevin Bacon, Dennis Quaid, Dave Matthews, John Oates, and Gavin Rossdale.[4] SUF ¶4-8.
Excelled sells its ROGUE clothing through department store and clothing store trade channels,
including Nordstrom, Saks, Neiman Marcus, and Macy's.  SUF 9. From 2000 through 2012,
Excelled's sales of ROGUE clothing products have amounted to more than $30 million. SUF 9.

**B.**    **OBC's Limited Use of ROGUE on Promotional Products and its
          Representations Under Penalty of Perjury to the United States Patent and
          Trademark Office**

OBC operates brew pubs and sells beer under the mark ROGUE.  OBC has had actual
knowledge of Excelled's rights in the ROGUE Marks since at least July 2005, when its attorney
admitted finding  Excelled's previously registered ROGUE clothing marks during a trademark
availability search to determine whether ROGUE was  available. SUF 16.  Despite finding
ROGUE's prior marks, OBC applied to register the mark "ROGUE" for "clothing, namely, t-
shirts, sweatshirts, polo shirts, turtlenecks, aprons, hats."  SUF 15-16.  On March 13, 2006, the

---

[3] (i) Reg. No. 2,790,074 (incontestable) ROGUE LEATHER BY REILLY OLMES for "men's, women's and
children's clothing made in whole or in substantial part of leather, namely, coats, vests, shirts and pants" (issued:
December 9, 2003), (ii) Reg. No.  3,260,143 ROGUE for "footwear" (issued: July 10, 2007); (iii) Reg. No.
3,346,559, ROGUE, for "men's, ladies' and children's clothing, namely, coats, jackets, vests, shirts and pants"
(issued: December 4, 2007); and (iv) Reg. No. 3,945,523 ROGUE STATE for "men's, ladies' and children's
clothing, namely, coats, jackets, vests, shirts and pants" (issued: April 12, 2011). *Id.* ¶3.

[4] These celebrities and others have been depicted wearing Plaintiff's ROGUE clothing in widely circulated
magazines, including *GQ, Maxim, Men's Journal*, and *Men's Fitness*, and in other print and Internet publications.

AFDOCS/10594209.3
AFDOCS/10594209.3

PTO refused registration of OBC's application on the ground that OBC's mark created a likelihood of confusion with Excelled's "ROGUE" mark.  SUF 17.  At the time its application was rejected, OBC was not using the mark ROGUE on clothing sold in clothing stores.

OBC contacted Excelled and sought help in overcoming the PTO's citation of Excelled's Mark.  Because OBC was only using ROGUE on promotional clothing products to promote its beer, Excelled agreed to help OBC obtain a registration for its mark. *Id.*  In 2007, at the suggestion of OBC's attorney, Excelled and OBC signed an agreement (the "2007 Agreement") providing that each party would delete a few clothing products from their applications.   OBC did not state that it had any intention of selling its products in Excelled's trade channels and Excelled would never have agreed to help OBC if it had.  Moreover, Excelled never agreed to restrict its use of ROGUE to any particular products.  OBC then amended its application to "exclude[e] jackets, coats and skirts."  SUF 18.  And on June 22, 2007, OBC filed an argument and a copy of the 2007 Agreement in an effort to overcome the PTO's rejection of its application. OBC admitted that it and Excelled sold their "ROGUE" goods in different trade channels and, therefore, that there was no likelihood of consumer confusion:

> ***OBC's clothing products are sold as marketing adjuncts to its primary product, beer. OBC consumers who purchase OBC's ROGUE almost always are very aware that the ROGUE brand on clothing products is complimentary [sic] to ROGUE beers***; indeed, the connection between the beer and the clothing (i.e., "brand loyalty") is one of the principal reason [sic] why consumers purchase ROGUE clothing. … OBC and Excelled both sell clothing under the ROGUE brand.   However, the parties have carefully considered their goods and marketing conditions, crafted identifications of goods based on those realities, and have entered into an agreement that reflects their business conclusions.…

> Under the circumstances, where the parties have investigated and evaluated the circumstances surrounding their respective uses of the mark, the agreement should perhaps best be viewed as an acknowledgement by the parties of the marketplace reality that there is no likelihood of confusion.  … ***[T]he parties believe that so long as they use their respective marks in well-defined ways … and, under the commercial realities of the parties' operations, non-overlapping goods, there will be no likelihood of***

> *confusion*.

*Id.* ¶ 19,(emphasis added).

On June 26, 2007, the PTO again rejected OBC's application.  SUF 20.  OBC then submitted another response, on July 23, 2007, in which it unequivocally admitted that its ROGUE goods were sold only in a very limited trade channel (OBC's own brew pubs and website) and that there was no likelihood of confusion:

> The clothing sold by OBC compliments [sic] and promotes its primary products, beer and other beverages (e.g., spirits such as rum).  **Where the subject application has been amended to delineated trade channels that are owned, operated and controlled by the Applicant, and where the goods are sold as compliments [sic] to and in promotion of Applicant's primary products, there is no likelihood that consumers would be confused by the mark of the '735 application**.  Applicant's brewing customers purchase Applicant's clothing because the clothing compliments [sic] and promotes the brewery products.  Consumers know exactly what they are purchasing, and from whom they are purchasing it.

*Id.* (emphasis added).[5]  In reliance on OBC's admission that its rights in ROGUE were limited to clothing "sold primarily in the trademark owner's brewpubs and web site, as compliments to and in promotion of the trademark owner's brewing and beverage businesses," the PTO approved OBC's application and issued a registration with that limitation included in the description of goods.  SUF 27.

## C.    The Oregon State Court Litigation

In 2011, OBC filed a breach of contract action against Excelled in Oregon state court, belatedly alleging that Excelled had breached the Agreement by failing to amend the description of goods contained in Excelled's application for the mark ROGUE.  SUF 29.  However, OBC had terminated the Agreement prior to filing its complaint, and the Court granted Excelled's

---

[5] OBC further admitted that its "goods are sold in Applicant's premises to promote Applicant's primary businesses. A consumer who visits a ROGUE brewpub or OBC's website and [sic] will know that the ROGUE clothing that is offered for sale comes from the source as the beer." SUF 22-26.  OBC's submission to the PTO were accompanied by declarations attesting under penalty of perjury that the statements were true.

motion for summary judgment dismissing OBC's claims in their entirety. SUF 30-31.

**D.    The Cross-License Agreement Between OBC and Chinook Trading Company**

On July 19, 2007, OBC and Chinook Trading Co. ("Chinook") purported to enter into a contract referred to as a "Cross-License Agreement" in which OBC granted Chinook a license to use the mark ROGUE for "clothing in the U.S." SUF 32-33   On September 24, 2010, before the OBC initiated the Oregon suit, Excelled acquired Chinook's foreign registrations in the mark ROGUE and all of its rights, title and interest in the mark ROGUE outside the United States by executing a "Trademark Transfer Agreement". Pursuant to that agreement, Chinook also purported to assign to Excelled, "to the extent such rights are assignable, all of Chinook's rights and obligations in, to, and under the Cross-License Agreement" between Chinook and OBC. *Id.* Until this litigation, OBC has consistently maintained that Chinook was *not* permitted to transfer its rights under the Cross-License Agreement to Excelled. SUF 35.

**E.    OBC's Recent Expansion Into Excelled's Channels of Trade**

Beginning in 2011, OBC suddenly expanded its sales of ROGUE clothing into Excelled's channels of trade, namely, department store and clothing store trade channels including Nordstrom and Sears. SUF ¶39-40. The products sold by OBC through these channels were t-shirts bearing the mark "ROGUE." SUF ¶41. OBC started selling the infringing ROGUE t-shirts in 2011, after it entered into contracts with two t-shirt manufacturers—Crazy Shirts and Palmer Cash. On February 24, 2012, after OBC refused to cease its infringing conduct, Excelled filed the Complaint against OBC in this Court.

# REDACTED

### G.    OBC's Answer and Its Bad Faith Filing of a Baseless Counterclaim Against Excelled

On May 14, 2012, OBC filed a motion for leave to amend its answer to add a counterclaim asserting for the first time that it owned prior rights in the mark ROGUE for clothing. The counterclaim also included a an allegation that prior rights over Excelled because of the Agreement in which Chinook assigned its foreign ROGUE marks to Excelled.[6] The Court initially rejected OBC's counterclaims, finding the allegations "too conclusory." Tr., at 2:6.[7] On July 27, 2012, OBC submitted an amended counterclaim falsely alleging that OBC owned prior rights in ROGUE in **all trade channels** because "[b]y at least as early as 1998, OBC's ROGUE-branded clothing was being advertised, distributed and sold throughout the United States, including via the internet, at OBC's restaurants, at major retail outlets, such as Fred Meyer, at festivals and community events, via mail order, via telephone order and via its distributors." *Id.*, at 9. Based on these misrepresentations, the Court allowed OBC's counterclaim to proceed,

---

[6] Specifically, OBC alleged that "Excelled is a licensee of the trademark ROGUE from OBC for use on clothing products in the United States." *Id.*, at Para. 9.

[7] The Court informed OBC that it must come forward specific facts showing that, *inter alia,* "despite agreeing that there was no likelihood of confusion at the time, and that [OBC was not] selling in the broader market … *[OBC in fact] sold in the broader market before [Excelled],* that [Excelled] is violating the trademark protection that [OBC has] and that there's a likelihood of confusion in that market." Transcript at 8:8-20. During the hearing, OBC's attorney indicated that OBC's basis for its allegations was that it had made sales of ROGUE-branded apparel to "Fred Meyer Company." *Id.*, at 6:1-3.

noting that OBC's allegations were "minimally sufficient" and that "we can revisit whether or not those allegations can be supported by the true facts" at the summary judgment stage.  SUF 43-52.

Discovery confirms that prior to 2011, OBC had never sold its ROGUE clothing in department stores and clothing stores.  SUF 53-64.

# REDACTED

---

8

# REDACTED

9

## III.   ARGUMENT

### A.   EXCELLED IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT

There is no genuine issue as to (1) Excelled's ownership of prior rights in the mark ROGUE for department store and clothing store trade channels; (2) the likelihood of confusion caused by OBC's sales of clothing bearing the counterfeit mark ROGUE in Excelled's channels of trade; and (3) OBC's inability to prove the elements of its groundless counterclaims.[11]

### B.   EXCELLED IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS COUNTERFEITING, INFRINGEMENT, UNFAIR COMPETITION, AND UNFAIR TRADE PRACTICES CLAIMS

#### 1.   OBC's Use of the Identical Mark "ROGUE" for Clothing Sold in Excelled's Trade Channels Constitutes Counterfeiting Under the Lanham Act

##### a.   Excelled Has Proved the Elements of its Counterfeiting Claim

To establish liability for trademark counterfeiting, a plaintiff must demonstrate ownership of trademark that is registered under the Lanham Act with the PTO.[12]   In cases of counterfeit marks, the plaintiff need only prove that the items were counterfeit and that the defendant sold them.[13]  A mark is considered counterfeit under the Lanham Act if it is "identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  There is no dispute

---

[11] A party is entitled to summary judgment when there is no "genuine dispute as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  To stave off summary judgment, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

[12] *See* 15 U.S.C. § 1114(1)(b); *Philip Morris USA, Inc. v. Jackson*, 826 F. Supp. 2d 448, 451 (E.D.N.Y. 2011); *citing Arrow Fastener v. Stanley Works*, 59 F.3d 384, 390 (2d Cir. 1995).

[13] *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); *accord Philip Morris USA, Inc. v. Marlboro Express*, No. CV-03-1161, 2005 WL 2076921, at *4 (E.D.N.Y. Aug. 26, 2005).

10

that Excelled owns numerous federal registrations for its ROGUE Marks for clothing, and those marks are entitled to protection under the Lanham Act.[14] *See* 15 U.S.C. §§ 1057(c), 1072.  It is also indisputable that OBC has sold clothing bearing the mark "ROGUE," which is identical to Excelled's registered mark in Excelled's long established trade channels.  Numerous t-shirts sold by OBC through Nordstrom and other department stores prominently bear the mark "ROGUE" in isolation, without any other wording.  Thus, OBC's ROGUE mark is "identical" or "substantially indistinguishable from" Excelled's ROGUE Marks under . 15 U.S.C. § 1127. Excelled is therefore entitled to summary judgment on its counterfeiting claim.

### 2.     Excelled is Entitled To Summary Judgment On Its Federal and Common Law Claims for Trademark Counterfeiting, Infringement, and Unfair Competition

Excelled's claims for trademark infringement, false designation of origin, and unfair competition under the Trademark Act and the common law (Counts II, III, and V of Excelled's Complaint) each require proof of the same two elements: (1) that Excelled has prior rights in a valid trademark; and (2) that OBC's use of its mark presents a likelihood of consumer confusion. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).[15]  Excelled has satisfied both elements.

# REDACTED

---

[14] Excelled's registrations provide *prima facie* evidence (and in the case of its incontestable registration for ROGUE LEATHER BY REILLY OLMES, conclusive evidence) of the validity of Excelled's marks, Excelled's ownership of those marks, and its right to use the marks in commerce.  15 U.S.C. §§ 1057(c), 1072.

[15] *Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 137 (2d Cir. 1999) (evaluating false designation of origin claim under 15 U.S.C. § 1125(a) under the same elements as a claim for trademark infringement under § 1114); *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F.Supp.2d 545, 548 (E.D.N.Y. 2007) (noting that the elements of a claim for trademark infringement under 15 U.S.C. § 1125(a) are identical to a claim for common law trademark infringement).

11

### a.   Excelled Owns Prior Rights in the ROGUE Marks for Clothing Sold in Department Store and Clothing Store Trade Channels

Excelled owns prior rights in ROGUE for clothing sold in department store and clothing store trade channels and OBC admitted this in its filings with the PTO. Excelled's ROGUE trademark registrations contain no trade channel restrictions. Thus, Excelled is entitled to a presumption that it owns rights in those marks for all channels for which goods of that type are customarily sold. In addition, Excelled has produced sales records showing millions of dollars in sales of ROGUE clothing through Nordstrom, Neiman Marcus, Saks Fifth Avenue, and similar stores between 2000 and the present. SUF 9. By contrast, OBC admits that it did not start selling ROGUE clothing in department store and clothing store channels until 2011, when it decided to expand into those channels in an effort to drive up the value of the company and attract buyers. SUF ¶ 54, 66-68. Further, OBC conceded to the PTO that it did not sell ROGUE products in clothing or department stores but rather that it only operated in a very limited channel of trade—primarily its own brew pubs and website. By agreeing to restrict its trade channel in this manner, OBC necessarily admitted that Excelled was the owner of prior rights in the mark "ROGUE" for clothing sold in department store and clothing store trade channels

OBC has attempted to overcome its sworn admissions to the PTO, by hiring other lawyers to provide legal arguments disguised as "expert reports." For example, Cincinnati attorney Kenneth Germain[16] ("Germain") argues that the word "primarily" does not mean "exclusively," and thus the presence of the word "primarily" does not reflect any restriction on OBC's channels of trade. As shown in the report of former Trademark Trial and Appeal Board Judge Gary Krugman ("Krugman"), Germain's opinion is inconsistent with standard PTO rules

---

[16] Excelled has filed a motion in limine seeking to exclude Germain's report.

AFDOCS/10594209.3
AFDOCS/10594209.3

and practice.  Indeed,  Germain's interpretation of the word "primarily" would render the word

meaningless, since under his interpretation, the word "primarily" would impose no limitation

whatsoever on OBC's channels of trade.  As  Krugman explained in his report, the presence of

the word "primarily" must be read in the context of the prosecution history of OBC's trademark

application.  *Id.*  During that prosecution, OBC repeatedly admitted under oath that it sold

ROGUE clothing only through its brew pubs and website, and only as complementary products

to promote its beer.  As a matter of practice, the PTO does not allow the registration of identical

marks for identical goods without the entry of a trade channel restriction.  Consequently, if OBC

had not agreed to the trade channel limitation, the PTO never would have approved its

application, and OBC would not have received a trademark registration.  In short, OBC's sworn

representations to the PTO speak for themselves.  As OBC admitted, it was not selling ROGUE

clothing in department store and clothing store channels in 2007.  OBC's effort to re-write

history and establish priority in those channels must be rejected.

### b.    OBC's Use of the Mark ROGUE on Clothing Sold in Excelled's Trade Channels Creates a Likelihood of Confusion

OBC has admitted in its infringement counterclaim that the marks at issue are so similar

as to result in a likelihood of confusion.  This judicial admission is binding on OBC and thereby

relieves the Court of the need to resolve it.[17]  Even if OBC had not conceded likelihood of

confusion,  the *Polaroid* factors[18] show that consumer confusion was inevitable when OBC

started selling ROGUE clothing in Excelled's trade channels.

---

[17] *See NLRB v. Consol. Bus Transit, Inc.,* 577 F.3d 467, 474-75 (2d Cir. 2009) ("[F]acts admitted in … any pleading [] are judicial admissions that bind the [party] throughout [the] litigation.") (citation omitted).
[18] The factors used by the Second Circuit to assess likelihood of confusion were announced in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961): (1) Strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of

13

Under the *Polaroid* analysis, similarity in the parties' channels of trade is considered under factors three and four.[19]   Conflicts regarding trademark rights in specific trade channels are not unusual in trademark law.  Such disputes generally arise in situations like this one, where two parties have been using a similar or identical mark in connection with similar goods, but in distinct channels.  In those circumstances, it is not unusual for the PTO and courts to conclude that the parties' marks can co-exist without causing consumer confusion, so long as they limit their use to their specific trade channels.[20]   However, where a party disturbs the status quo and expands into the other party's trade channels, this gives rise to a cause of action for trademark infringement and other Lanham Act claims.

In *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735 (7th Cir. 2013), the Seventh Circuit considered a case with strikingly similar facts.  Kraft owned prior rights in the mark CRACKER BARREL for cheese sold through grocery store channels.  *Id.* at 736.  Cracker Barrel owned the mark CRACKER BARREL for ham and other food products sold through "country stores" adjoining its restaurants.  *Id.* at 737.  The parties coexisted peacefully for many years, with each party using the CRACKER BARREL mark for food products sold in their respective trade channels.  *Id.*  In 2012, Cracker Barrel suddenly expanded the channels of trade through which it sold ham under the CRACKER BARREL mark, and started selling those goods in grocery store channels where Kraft owned prior rights.  *Id.*

---

actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

[19] In examining these factors, "the courts compare all aspects of the products, including price, style, intended use, target clientele, typical distribution channels, and others."  *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 316 (S.D.N.Y.), *aff'd sub nom. Paco Sport, Ltd. v. Paco Rabanne Perfumes*, 234 F.3d 1262, 2000 WL 1721126 (2d Cir. 2000).

[20] *See, e.g., Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*, 673 F. Supp. 1238, 1249 (S.D.N.Y. 1987) (where both parties used "PASSION" for perfume, court enjoined Taylor from selling "PASSION" perfume in "first-tier" department stores, but not other trade channels).

14

Kraft sued Cracker Barrel for trademark infringement, and the court ruled in Kraft's favor, reasoning as follows:

> It's not the fact that the parties' trade names are so similar that is decisive, nor even the fact that the products are similar (low-cost packaged food items). It is those similarities coupled with the fact that, if [Cracker Barrel] prevails in this suit, *similar products with confusingly similar trade names will be sold through the same distribution channel— grocery stores, and often the same grocery stores ... Such similarities and overlap would increase the likelihood of confusion detrimental to Kraft.*

*Id.* at 739. The same reasoning applies here. After years of peaceful co-existence in their respective trade channels, OBC suddenly expanded into Excelled's department store and clothing store trade channels, thereby creating a situation where consumer confusion was inevitable because both it and Excelled were selling the same products, under the same marks, through the same stores. Accordingly, OBC's use of its mark ROGUE for clothing sold in Excelled's channels of trade presents a likelihood of confusion.

The remaining *Polaroid* factors also favor Excelled, as summarized below:

- *Confusion is Enhanced Because Excelled's ROGUE Marks Are Strong.* Excelled's ROGUE Marks are strong because they are arbitrary, and because the marks have great commercial strength in light of Excelled's substantial sales and widespread advertising and publicity.[21]
- *Confusion is Enhanced by the Similarity of the Marks.* The parties' marks are identical.
- *Confusion is Enhanced by OBC's Use of the Mark in Bad Faith.* OBC's decision to expand into Excelled's channels despite its knowledge of Excelled's prior rights in department store and clothing store channels is the epitome of bad faith.[22]
- *Confusion is Enhanced by the Respective Quality of the Products.* Excelled is an apparel company whose sole business in the sale of high quality clothing products. As such, its goods are manufactured pursuant to strict quality control standards. By contrast, OBC is a beer company that sells t-shirts as an ancillary

---

[21] *Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F. Supp. 1547, 1555 (S.D.N.Y. 1987) ("In evaluating the 'strength' of a mark, however, one considers not only its conceptual strength ... but also its commercial strength: that is, its significance in the marketplace as identifying the origin of goods").
[22] *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (good/bad faith factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product") (citation omitted).

AFDOCS/10594209.3
AFDOCS/10594209.3

sliver of its business, solely for the purpose of promoting its beer.  OBC produced no evidence of any quality control or manufacturing guidelines used by its t-shirt manufacturers.[23]

- **Confusion Is Enhanced by the Degree of Sophistication of the Relevant Consumers.** Consumers are not likely to exercise a high degree of care when purchasing one of OBC'S ROGUE t-shirts, which are relatively inexpensive.   .

Because Excelled has established both priority in its exclusive trade channels and likelihood of confusion, it is entitled to summary judgment on its trademark infringement, false designation of origin, and unfair competition claims.

**3.      Excelled is Entitled to Summary Judgment on Its Claim for Unfair Trade Practices Under the Statutory Laws of New York**

OBC's acts of counterfeiting and infringement violate Section 349(a) of the New York General Business Law because (1) OBC engaged in consumer-oriented acts by selling its infringing ROGUE clothing in New York; (2) OBC's consumer-oriented acts were misleading in a material way because OBC used counterfeit imitations of Excelled's ROGUE Marks for goods sold in Excelled's channels of trade, and (3) Excelled was damaged by those acts.[24]  Accordingly, Excelled has satisfied the elements of this claim, and should be granted summary judgment.

---

[23] The purpose of this factor is to "guard against tarnishing the reputation of the [senior user's] mark," which would be caused if an infringer uses the mark on goods of lesser quality.  *See Lever Bros. Co. v. Am. Bakeries Co.*, 693 F.2d 251, 258 (2d Cir. 1982). .

[24] A party challenging an act or practice under Section 349 "must show that (1) defendant engaged in a consumer-oriented act; (2) that the consumer-oriented act was misleading in a material way; and (3) that plaintiff consequently suffered injury."  *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 301-02 (S.D.N.Y. 2002) (citing *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)).  Courts have routinely found violations of Section 349(a) in trademark infringement and counterfeiting cases.  *See GTFM, Inc.*, 215 F. Supp. 2d at 301-302 ("[b]y intentionally using the '05' designation in a manner confusingly similar to GTFM's use of the '05' trademark, and causing actual confusion, Solid engaged in a consumer-oriented act that was misleading in a material way"); *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL 1675080, at *16 (S.D.N.Y. June 10, 2009) ("[b]y selling infringing products to third party retailers located in New York, [defendant] placed into the stream of commerce goods likely to confuse consumers as to their true source of origin").

AFDOCS/10594209.3
AFDOCS/10594209.3

**C.     EXCELLED IS ENTITLED TO SUMMARY JUDGMENT DISMISSING ALL OF OBC'S COUNTERCLAIMS**

**1.     The Court Should Dismiss All of OBC's Trademark Infringement, False Designation of Origin, and Unfair Competition Claims[25]**

**a.     OBC Cannot Establish That it Owns Prior Rights in Excelled's Department Store and Clothing Store Trade Channels**

OBC advances two spurious legal theories for claim of prior rights in the mark ROGUE:

(1) it sold ROGUE clothing in such channels prior to Excelled; and (2) OBC's "merger" theory.

OBC's first theory fails because OBC has admitted that Excelled sold ROGUE clothing

in department store and clothing store trade channels long before OBC.  Excelled's trademark

registrations entitle it to a presumption that it owns rights in ROGUE for clothing sold in all

channels where goods of that type are customarily sold.  In addition, the record establishes that

Excelled first sold ROGUE clothing in department store and clothing store channels in 2000.  By

contrast, OBC conceded to the PTO that it had never sold ROGUE clothing in department store

and clothing store channels prior to 2011, when it surreptitiously began selling counterfeit

products through Nordstrom, one of Excelled's oldest customers. Prior to that time, OBC's

clothing sales were limited to its brew pubs and website.  OBC has sought to "un-do" and divert

attention from its representations to the PTO. However, OBC's President admitted that OBC did

not sell ROGUE clothing in those channels until 2011.  OBC has produced a few documents

purporting to show  pre-2000 sales of ROGUE clothing via festivals, newsletters, and mail order

catalogs, but all of this "evidence" simply reinforces what OBC told the PTO—that it sold

ROGUE clothing, a complementary product, to promote its ROGUE beer.  The same is true with

respect to its purported sales through Fred Meyer, World Market, and similar locations, all of

---

[25] Counts I – IV of OBC's counterclaim each require OBC to satisfy the same two elements:  priority and likelihood of confusion. *Virgin Enters. Ltd.*, 335 F.3d at 146.

which admittedly also sell OBC's ROGUE beer.  Thus, even if OBC made some pre-2000 sales, this does not give OBC prior rights in Excelled's department stores and clothing store trade channels.

OBC's second theory of priority—the so-called "merger" doctrine—is similarly baseless.[26]  In its motion for summary judgment in the Oregon litigation, OBC admitted to the court that the transaction between Chinook and Excelled "**did not transfer rights in the Cross-Licensing[sic] Agreement to Excelled**."  In addition, OBC's trademark attorney admitted that "OBC believes that Chinook is unable to transfer its rights under the license agreement to another party."  Further, OBC has cited no case law applying the "merger" doctrine in the circumstances presented here, namely, where Excelled never asked to become OBC's licensee, neither Excelled nor OBC negotiated or agreed to such an arrangement, and OBC had no rights to license ROGUE except for use on promotional clothing to promote its beer in limited trade channels.  Accordingly, both of OBC's theories of priority fail, and the undisputed facts show that Excelled, not OBC, owns prior rights in ROGUE for clothing sold in department store and clothing store trade channels.

### b.   OBC Cannot Establish Likelihood of Confusion Because Its Arguments Are Contrary To the Undisputed Facts

OBC also cannot establish the second element of its claims - that Excelled somehow created likelihood of confusion- because Excelled has never strayed from its long established trade channels.

---

[26] Pursuant to this theory, OBC alleges that it owns priority because by virtue of the Transfer Agreement between Excelled and Chinook, Excelled supposedly became OBC's licensee for the mark ROGUE for clothing.  OBC's argument fails because it directly contradicts OBC's own admissions.

# REDACTED

Consequently, there is no evidence that the changes Excelled implemented in 2009 caused a likelihood of confusion with OBC's ROGUE Marks.  Instead, it was OBC who disrupted the peaceful co-existence of the parties by suddenly introducing counterfeit products into Excelled's trade channels.

 **2.** **The Court Should Dismiss OBC's Trademark Cancellation Claim**

Excelled is entitled to summary judgment on Count IV of OBC's counterclaim because it improperly seeks cancellation of Excelled's *incontestable* registration (Reg. No. 2,790,074 for ROGUE LEATHER BY REILLY OLMES) based on priority and likelihood of confusion under Section 2(d) of the Lanham Act.  These grounds are not a valid basis for cancellation of an

---

[27] Mr. Anson's report is inadmissible under Rule 702 of the Federal Rules of Evidence, and concurrently with this motion Excelled is moving to exclude his report in its entirety.

incontestable registration.[28]  OBC does not plead any other grounds, nor could it.[29]

### 3.   Excelled is Entitled to Summary Judgment Dismissing OBC's Trademark and Unfair Competition Claims Based on Its Affirmative Defenses

#### a.   OBC's Counterclaims Are Barred by the Statue of Limitations

Courts in the Second Circuit apply a six-year limitations period to Lanham Act claims, which is triggered when the party discovered the claim or could with reasonable diligence have discovered it.[30]  Applying the foregoing standard, OBC's counterclaims are plainly barred.  OBC became aware of Excelled's use of the ROGUE mark for clothing at least as early as July 2005, when its attorney Douglas Hancock conducted a trademark availability search that disclosed Excelled's ROGUE marks, and communicated those results to OBC.   Excelled's rights were a matter of public record as early as January 2000 and if OBC had any legitimate interest in ROGUE as a clothing mark it should have known of those rights then.  Despite OBC's admitted actual knowledge, it never objected to Excelled's use of its ROGUE Marks for clothing until *nearly seven years later*.

#### b.   OBC's Counterclaims Are Barred By Laches

Laches requires proof of two elements:  (1) that OBC unreasonably delayed before asserting its counterclaim, and (2) that Excelled was prejudiced by this delay.  *See Conopco, Inc.*, 95 F.3d at 192.  Excelled is entitled to a presumption of laches because OBC's period of delay

---

[28] *See* 15 U.S.C. §§ 1064, 1065.

[29] Excelled is entitled to summary judgment as to all of its registrations because OBC has failed to show priority and likelihood of confusion in Excelled's trade channels. Under  the *Morehouse* doctrine, Excelled's  registrations that are less than five years old are also immune from cancellation  because there is no added damage in that the goods in the later registrations are essentially the same as those in its incontestable registration.  *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F. 2d 881, 884 (C.C.P.A. 1969).

[30] *See Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 (S.D.N.Y. 2000) (citing 15 U.S.C. § 1125(a); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996)).

20

was longer than the applicable statute of limitations. *Id.* at 191. OBC cannot rebut this

presumption. First, OBC's nearly seven-year period of delay is unreasonable as a matter of

law.[31] From 2005 forward, OBC had numerous opportunities to object to Excelled's use of

ROGUE for clothing, but never did. Second, Excelled has been severely prejudiced by OBC's

delay. Prejudice ensues when a "defendant has changed his position in a way that would not

have occurred if the plaintiff had not delayed." *Conopco*, 95 F.3d at 192 (citation omitted).

During OBC's period of delay, Excelled expended significant resources to develop, advertise,

and promote its ROGUE clothing products, thereby developing substantial goodwill in its

ROGUE Marks. Excelled would be severely prejudiced if it were forced to stop using its

ROGUE Marks now, after its massive expenditure of time and resources to build goodwill in the

marks.[32]

<b>c.     OBC's Counterclaims Are Barred by Acquiescence</b>

Acquiescence requires proof of three elements: "(1) the senior user actively represented

that it would not assert a right or a claim; (2) the delay between the active representation and

assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue

prejudice."[33] Excelled has satisfied all of these elements. First, OBC actively represented in the

---

[31] *See Trs. Of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 753 (S.D.N.Y. 1997) (finding laches where plaintiff delayed three and a half years before objecting); *Conopco*, 95 F.3d at 190 (finding laches where plaintiff delayed more than five years before filing suit); *Am. Dietaids Co. v. Plus Prods.*, 412 F. Supp. 691, 695 (S.D.N.Y.) (finding laches where plaintiff delayed seven years before objecting), *aff'd*, 551 F.2d 299 (2d Cir. 1976).

[32] *See Conopco*, 95 F.3d at 192 (finding that Campbell was prejudiced by the plaintiff's delay because during the period of delay, "Campbell committed massive resources to best exploit a marketing strategy which it chose a half dozen years ago" and "[b]y waiting over five years to assert its present claim, Conopco precluded the possibility that Campbell could effectively adopt an alternative marketing position"). OBC's claims for trademark infringement, false designation or origin, and unfair competition should be dismissed in their entirety. *Columbia University*, 964 F. Supp. at 751 (S.D.N.Y. 1997) (laches is defense to both permanent injunction and damages).

[33] *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) (quoting *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002)).

parties' Settlement Agreement that it would not assert its ROGUE mark against Excelled, and it admitted to the PTO that Excelled owned prior rights in ROGUE for clothing sold in department store and clothing store channels. The second and third elements of Excelled's acquiescence defense are also satisfied because OBC's nearly seven-year delay was not excusable, and Excelled has been prejudiced by the delay.

### d.    OBC's Counterclaims Are Barred By Judicial Estoppel

Excelled has satisfied the elements of judicial estoppel.[34] First, OBC's current allegation that it has prior rights in "ROGUE" for clothing sold in department store and clothing store channels is "clearly inconsistent" with the statements made under penalty of perjury to the PTO, in which OBC admitted that it had no rights in Excelled's trade channels and even amended its application to limit its trade channels to its brewpubs and its own website.[35] Second, OBC's prior position was adopted by the PTO, and the PTO "accepted the accuracy" of OBC's statement in approving OBC's application with the trade channel limitation for publication. Third, OBC would derive a grossly unfair advantage if it is allowed to argue in this lawsuit that it owns prior rights in ROGUE for clothing sold in department store and clothing store channels. OBC's actions are precisely the type of conduct that the doctrine of judicial estoppel prohibits.[36]

---

[34] Judicial estoppel requires proof of three elements: "(1) a party's later position is 'clearly inconsistent' with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-96 (2d Cir. 2011) (citations omitted).

[35] OBC's current position with respect to the validity of the Cross-License Agreement is "clearly inconsistent" with its statements to the Oregon state court, in which OBC asserted that Chinook did not transfer any trademark rights to Excelled.

[36] *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("A litigant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order win a second victory"); *see also Top Tobacco, L.P. v. N. Atl. Operating Co.*, No. 06 C 950, 2007 WL 1149220, at *4 (N.D. Ill. Apr. 17, 2007) (awarding prevailing defendant its attorneys' fees where "[b]ased on Top Tobacco's statements to the USPTO, it is

AFDOCS/10594209.3
AFDOCS/10594209.3

### 4.   Excelled Is Entitled to Summary Judgment on OBC's Breach of Contract Claim

OBC cannot prove the elements of its breach of contract claim.[37]  First, the Cross-License is not valid, and OBC repudiated it by asserting that Chinook's assignment of its rights to Excelled was improper and subject to invalidation.[38]  If Chinook's assignment to Excelled was in fact invalid, then Excelled is not a party to the contract at issue, and OBC cannot prove the first element of its claim.  Second, OBC has adduced no evidence concerning the second element of its claims, namely, that "relevant terms" were supposedly breached.  OBC cites no provision of the Cross-License Agreement requiring OBC's "approval" of any goods sold by Excelled, nor could it, since no such provision exists.  Third, OBC pleaded no facts whatsoever asserting that it has fully performed its obligations under the contract, or that it is not in breach.  Finally, OBC cannot assert that it has been damaged in any way by any act of Excelled.

### D.   EXCELLED IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR DECLARATORY JUDGMENT

Excelled is entitled to the declaratory relief sought in its counterclaim against OBC.[39]  As

---

difficult to reach any conclusion other than it had to know before it filed this case that its claims lacked merit. Its change of positions before this Court needlessly increased the costs of defending this suit.").

[37] Assuming *arguendo* that Oregon law applies to OBC's breach of contract claim, OBC must plead the following elements in order to state a claim for breach of contract:  "1) existence of a contract, 2) relevant terms, 3) plaintiff's full performance and lack of breach; and 4) harm to plaintiff."  *Thomas v. OneWest Bank, FSB*, Civ. No. 10–6234–AA, 2011 WL 3585042, at *2 (D. Or. Aug. 15, 2011).

[38] *See, SUF 54* ("OBC requests an Order from the court invalidating the sale of the sub-license or assignment of the licensing rights from Chinook and ROB to Excelled and/or disallowing Excelled to use the trademark rights provided pursuant to the Settlement and Cross-License Agreements.").  In addition, in its motion for summary judgment in the Oregon litigation, OBC admitted  that the transaction between Chinook and Excelled "*did not transfer rights in the Cross-Licensing [sic] Agreement to Excelled*."  Indeed, that has been OBC's firm position since at least November 22, 2010, when its trademark counsel, Douglas Hancock, stated in an email that "OBC believes that Chinook is unable to transfer its rights under the license agreement to another party."  Excelled was never a licensee of OBC and it did not breach any license agreement with OBC.  OBC's new theory is simply another story that its attorneys have manufactured for this lawsuit.

[39] Excelled seeks a declaratory judgment that (a) the Cross-License Agreement between OBC and Chinook is rescinded and null and void in its entirety; (b) that Excelled never became a licensee of OBC; (c) Excelled never

23

detailed *supra*, the Cross-License Agreement is invalid, and Excelled never became a licensee of OBC.  Further, OBC cites no case in which a court has applied the so-called "merger doctrine" in the circumstances presented here.

### E.    EXCELLED REQUESTS INJUNCTIVE RELIEF, DAMAGES AND ATTORNEYS' FEES

Excelled is entitled to a permanent injunction prohibiting OBC from using ROGUE in Excelled's trade channels.  In addition, OBC's willful counterfeiting, its misrepresentations to the court, and its deliberate attempts to improperly prolong and increase the costs of litigation justify a maximum award of $2 million in statutory damages to Excelled.[40]

"The standard for willfulness is whether the defendant had knowledge that his conduct represented infringement or perhaps recklessly disregarded the possibility."[41]  Here, OBC has known of and acquiesced in Excelled's prior rights in ROGUE for clothing sold in department store and clothing store channels since at least 2005.  And OBC admitted to the PTO that Excelled owned prior rights in those channels by conceding that Excelled's use of ROGUE created no likelihood of confusion.  Despite those admissions and its knowledge of Excelled's rights, OBC willfully sold counterfeit ROGUE clothing in those channels.  This warrants an award of the maximum

---

lost, and OBC never gained the benefit of, Excelled's prior rights in the mark ROGUE under the so-called "merger" doctrine or any other theory; and (d) that OBC has no license from Excelled to sell ROGUE products.

[40] *See* 15 U.S.C. § 1117(c)(2) (for acts of willful counterfeiting, court may award up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just"). See also, *e.g.*, *Coach Inc., v. Allen*, No. 11-CV-3590, 2012 WL 2952890 (S.D.N.Y. July 19, 2012) (granting summary judgment and awarding the maximum amount of statutory damages to deter and punish the defendants willful infringement); *Chanel, Inc. v. Gardner*, No. 07 Civ. 6679 (GBD)(MHD), 2011 WL 204911 (S.D.N.Y. Jan. 21, 2011).

[41] *Philip Morris USA, Inc. v. Felizarda,*, No.. 03 Civ. 5891, 2004 WL 1375277, at *7, n.15 (S.D.N.Y. June 18, 2004) (quoting *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) (emphasis added) ; *see also Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378, at *6-7 (*quoting Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 514 (7th Cir. 1994) ("one who undertakes a course of infringing conduct may neither sneer in the face of the [trademark] owner nor hide its head in the sand like an ostrich")).

statutory damages.   Excelled is also entitled to its attorneys' fees because this is an "exceptional

case" under.   15 U.S.C. § 1117(a).  Exceptional cases include those where a party pursued a

claim vexatiously, in bad faith, or where its claims are frivolous or completely lacking in merit.[42]

OBC's counterclaims contradicted prior sworn representations the PTO and the Oregon state

court.  Further, OBC induced this Court to allow its counterclaim by deliberately and falsely

representing that it had pre-2000 sales of ROGUE clothing in Excelled's trade channels.  OBC's

President admitted the falsity of these claims.  OBC's counterclaim was obviously filed in bad

faith to misappropriate Excelled's mark

## IV.    CONCLUSION

For all of the foregoing reasons, Excelled respectfully requests that the Court grant

summary judgment in Excelled's favor with respect to all the counts in its Complaint and

Counterclaim and that the Court dismiss all the counts in OBC's counterclaim.

---

[42] *See Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 786 (2d Cir. 1988) ("In this circuit, exceptional circumstances warranting an award of attorneys' fees include cases where the losing party had either prosecuted or defended an action in bad faith."); *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983) (awarding fees where claims had no real substance and where "substantial overtone" of the case warranted "an inference that this suit was initiated as a competitive ploy"), *aff'd*, 742 F.2d 1437 (2d Cir. 1984); *Diamond Supply Co. v. Prudential Paper Prods.Co.*, 589 F. Supp. 470, 476 (S.D.N.Y. 1984) (awarding fees based on finding that suit was "so patently baseless" that it presented an exceptional case).

AFDOCS/10594209.3
AFDOCS/10594209.3

Dated: New York, New York
December 13, 2013

ARENT FOX LLP

By _____

Bernice K. Leber, Esq. (BL1285)
ARENT FOX LLP
1675 Broadway
New York, New York 10019
(212) 484-3928

and

Michael A. Grow (MG-1029)
(*admitted pro hac vice*)
Alec P. Rosenberg
Ross Q. Panko
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20036
(202) 857-6389

*Attorneys for Plaintiff*
*Excelled Sheepskin & Leather Coat Corp.*

AFDOCS/10594209.3
AFDOCS/10594209.3