UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

EXCELLED SHEEPSKIN & LEATHER COAT
CORP.,

                                        Plaintiff,

            v.


OREGON BREWING COMPANY

                              Defendant.

---

Civil Action No. 12 – CV – 1416
(GBD)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO OBC'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS IN PLAINTIFF'S COMPLAINT

Bernice K. Leber (BL-1285)
1675 Broadway
New York, New York 10019
(212) 484-3930

and

Michael A. Grow
Alec P. Rosenberg
Ross Q. Panko
Arent Fox LLP
1717 K Street, NW
Washington, DC 20036
(202) 857-6389


*Attorneys for Plaintiff*
*Excelled Sheepskin and Leather Coat Corp.*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT AND INTRODUCTION ............................................. 1

II.    FACTUAL BACKGROUND ...................................................................................... 2

     A.    Excelled Has Prior Rights In Its Distinctive ROGUE Marks in Department Store and Clothing Store Trade Channels................................................................ 2

     B.    OBC Declared to the PTO Under Penalty of Perjury That It Has No Prior Rights In ROGUE Because it Used that Mark in Limited Trade Channels Other than Department Stores and Clothing Stores ............................................ 3

     C.    OBC Made False Representations to the Court As to Alleged Use of ROGUE in Excelled's Department Store and Clothing Store Trade Channels.................................................................................................................. 4

     D.    OBC Has No Evidence of ROGUE Sales in Department Stores or Clothing Stores Prior to 2011 ...................................................................... 5

III.    ARGUMENT ........................................................................................................... 7

     A.    Legal Standard ............................................................................................. 7

     B.    OBC Is Not Entitled To Summary Judgment as a Matter of Law On Any Counts Because Excelled Owns Prior Rights In the Mark ROGUE For Department Store and Clothing Store Trade Channels......................................... 7

     C.    OBC's Claim Of Priority Is Barred By Statute and Equitable Defenses ............. 11

     D.    OBC Is Not Entitled To Summary Judgment as to Any Counts Because There is No Valid Claim of Unclean Hands or Fraud ......................................... 15

         1.    OBC Never Pled Fraud, and Thus That Issue Is Not Properly Before the Court........................................................................................ 16

         2.    Excelled Made No False Representations to the PTO ............................ 16

             a.    Excelled Made No Material False Statement as to its Registrations for the Marks ROGUE and ROGUE LEATHER BY REILLY OLMES .............................................. 17

             b.    Excelled Made No Material False Statement as to its Registration for the Mark REILLY OLMES ROGUE LEATHER .......................................................................... 18

             c.    OBC Has Not Proven the Element of Deceptive Intent............... 18

     E.    OBC's Fraud Claims Are Barred By Equitable Defenses .................................... 21

     F.    OBC Is Not Entitled to Judgment as a Matter of Law on Excelled's New York Deceptive Practices Act Claim .................................................................... 23

     G.    OBC's Bad Faith Filing of Its Baseless Summary Judgment Motion Is Sanctionable, and OBC Should Be Ordered to Pay Excelled Its Attorneys' Fees ............................................................................................................... 24

IV.    CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Dietaids Co. v. Plus Prods.*,
412 F. Supp. 691 (S.D.N.Y.), *aff'd*, 551 F.2d 299 (2d Cir. 1976)...........................................13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................7

*Aromatique, Inc. v. Gold Seal, Inc.*,
28 F.3d 863 (8th Cir. 1994) ......................................................................................20

*Asian & W. Classics B.V. v. Selkow*,
92 U.S.P.Q.2d 1478 (TTAB 2009) .......................................................................16, 20

*Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*,
984 F. Supp. 768 (S.D.N.Y. 1997) .......................................................................13, 22

*Burberry Ltd. v. Euro Moda, Inc.*,
No. 08 Civ. 5781 (CM), 2009 WL 1675080 (S.D.N.Y. June 10, 2009)................................24

*Chaveriat v. Williams Pipe Line Co.*,
11 F.3d 1420 (7th Cir. 1993) ....................................................................................14

*Conopco, Inc. v. Campbell Soup Co.*,
95 F.3d 187 (2d Cir. 1996)........................................................................................13

*Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.*,
457 F.Supp. 1090 (S.D.N.Y. 1978), *aff'd* 607 F.2d 995 (2d Cir. 1979)...................................8

*Diamond Supply Co. v. Prudential Paper Prods. Co.*,
589 F. Supp. 470 (S.D.N.Y. 1984) ............................................................................25

*Edison Brothers Stores, Inc. v. Cosmair, Inc.*,
651 F. Supp. 1547 (S.D.N.Y. 1987).......................................................................20, 21

*Freedom Card, Inc. v. JPMorgan Chase & Co.*,
432 F.3d 463 (3d Cir. 2005).....................................................................................14

*Gen. Car & Truck Leasing Sys. Inc. v. General Rent-A-Car Inc.*,
17 U.S.P.Q.2d 1398 (S.D. Fla. 1990) ..........................................................................21

*GTFM, Inc. v. Solid Clothing Inc.*,
215 F. Supp. 2d 273 (S.D.N.Y. 2002)...........................................................................24

*Hanover Star Milling Co. v. Metcalf*,
  240 U.S. 403 (1916)...................................................................................................10

*Housing & Servs., Inc. v. Minton*,
  No. 97 Civ. 2755, 1997 U.S. Dist. LEXIS 8883 (S.D.N.Y. June 24, 1987)..........................11

*Imperial Tobacco Ltd. v. Phillip Morris, Inc.*,
  899 F.2d 1575 (Fed. Cir. 1990)...................................................................................12

*In re Adelphia Recovery Trust*,
  634 F.3d 678 (2d Cir. 2011).......................................................................................14

*In re Bose Corp.*,
  580 F.3d 1240 (Fed. Cir. 2009)............................................................................. passim

*In Re The Shoe Works*,
  6 U.S.P.Q.2d 1890, 1988 WL 252500 (TTAB 1988)................................................8, 11

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982)..................................................................................................23

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
  735 F.3d 735 (7th Cir. 2013) ...................................................................................9, 10

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
  15 F. Supp. 2d 389 (S.D.N.Y. 1998)...........................................................................10

*Mennen Co. v. Gillette Co.*,
  565 F. Supp. 648 (S.D.N.Y. 1983), *aff'd*, 742 F.2d 1437 (2d Cir. 1984) ...........................25

*Mister Leonard, Inc. v. Jacques Leonard Couture, Inc.*,
  23 U.S.P.Q.2d 1064 (TTAB 1992) ...............................................................................21

*Morehouse Mfg. Corp. v. J. Strickland & Co.*,
  407 F. 2d 881 (C.C.P.A. 1969) ....................................................................................12

*Motown Prods., Inc. v. Cacomm, Inc.*,
  849 F.2d 781 (2d Cir. 1988)........................................................................................25

*Polo Fashions, Inc. v. Extra Special Prods., Inc.*,
  208 U.S.P.Q. 421 (S.D.N.Y. 1980)...............................................................................21

*Pro-Football, Inc. v. Harjo*,
  415 F.3d 44 (D.C. Cir. 2005) ......................................................................................22

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,
  314 F.3d 62 (2d Cir. 2002)..........................................................................................13

*Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*,
    486 F.2d 114 (5th Cir. 1973) .................................................................................10

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)..................................................................................16

*Soward v. Deutsche Bank AG*,
    814 F. Supp. 2d 272 (S.D.N.Y. 2011)...................................................................21

*Top Tobacco, L.P. v. N. Atl. Operating Co.*,
    No. 06 C 950, 2007 WL 1149220 (N.D. Ill. Apr. 17, 2007)..................................14

*Trs. Of Columbia Univ. v. Columbia/HCA Healthcare Corp.*,
    964 F. Supp. 733 (S.D.N.Y. 1997) .......................................................................13

*Uzdavines v. Weeks Marine, Inc.*,
    418 F.3d 138 (2d Cir. 2005)..................................................................................14

*XILINX, Inc. v. Altera Corp.*,
    No. C 93-20409 RMW (EAI), 1993 WL 767688 (N.D. Cal. Oct. 25, 1993) ..........16

**STATUTES**

15 U.S.C. 1125(a) ........................................................................................................23

15 U.S.C. § 1064 .........................................................................................................12

15 U.S.C. § 1065 ................................................................................................... passim

15 U.S.C. § 1117(a) ....................................................................................................24

28 U.S.C. § 1927 .........................................................................................................25

Section 349 of the New York Deceptive Practices Act ...........................................23, 24

**OTHER AUTHORITIES**

1 *McCarthy on Trademarks and Unfair Competition* § 2:33 (4th ed.)........................23

3 *McCarthy on Trademarks and Unfair Competition* § 20:55 (4th ed.)......................12

Fed. R. Civ. P. 9(b) ....................................................................................................16

Fed. R. Civ. P. 56(a) .....................................................................................................7

Rule 9(b) of the Federal Rules of Civil Procedure ......................................................16

Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ...................1, 2

Rule 30(b)(6)..................................................................................................................6, 25

Rule 56.1 ............................................................................................................................5

## I.   PRELIMINARY STATEMENT AND INTRODUCTION

In its summary judgment motion, OBC has ignored the Court's instruction to show prior use of the mark ROGUE for clothing sold in *the specific trade channels at issue in this case*—department stores and clothing stores.  The Court noted OBC's admissions to the PTO that it sold ROGUE clothing primarily through its own brew pubs and website to promote its beer business.  OBC was allowed to file amended counterclaims only after OBC falsely represented that it had made prior sales in Excelled's department store and clothing store trade channels.

Excelled vigorously opposed the belated counterclaims by arguing that they directly contradicted sworn statements made by OBC to the PTO.  In permitting the amendment, the Court warned OBC to include specific facts showing that "despite agreeing that there was no likelihood of confusion at the time, and that [OBC was not] selling in the broader market … *[OBC in fact] sold in the broader market before [Excelled],* that [Excelled] is violating the trademark protection that [OBC has] and that there's a likelihood of confusion in that market." SUF[1] ¶ 46.  The Court found OBC's amended counterclaims "minimally sufficient" and held that "we can revisit whether or not those allegations can be supported by the true facts" at the summary judgment stage. *Id.* ¶ 51.

Subsequently, discovery showed that OBC deliberately misled the Court and that, in fact, it never made any sales in department stores and clothing stores until it deliberately began selling counterfeit goods in Nordstrom and other clothing stores in 2011.

Because OBC did not even address the Court's ruling or its prior admissions, OBC obviously filed the motion in bad faith.  In its motion, OBC first alleges that Excelled cannot protect itself against OBC's sale of counterfeit products because OBC owns prior trademark

---

[1] "SUF," as used herein, refers to Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1 (Docket Entry 65), which was filed with Excelled's Motion for an Order Granting Summary Judgment on All Counts in Plaintiff's Complaint and Counterclaim and Dismissing All Counts of Defendant's Counterclaim (Docket Entry 64).

rights for the mark ROGUE for clothing sold in all channels of trade. However, this claim of priority is based on the spurious assertion that OBC sold a few ROGUE clothing products in a very narrow trade channel--its own brew pubs and other locations where its beer was sold. Contrary to OBC's argument, the first sale date does not resolve the issue of priority in cases like this, where two parties have used the same mark in separate and distinct trade channels. In those circumstances, the courts and the PTO have found that parties' marks can co-exist without causing consumer confusion, so long as they confine their use to their respective trade channels. Where an unscrupulous party like OBC disturbs the status quo by expanding into the other party's trade channels, this gives rise to claims for counterfeiting, trademark infringement and unfair competition such as those contained in Excelled's Complaint.

For these reasons and for the reasons detailed below, the Court should deny OBC's motion, and find this to be an exceptional case and award Excelled its attorneys' fees.

## II.   FACTUAL BACKGROUND[2]

### A.   Excelled Has Prior Rights In Its Distinctive ROGUE Marks in Department Store and Clothing Store Trade Channels

Excelled has sold clothing and footwear under a family of marks containing the word ROGUE (the "ROGUE Marks") since at least as early as 2000. SUF ¶¶ 1-5. It filed its first application to register a ROGUE mark with the United States Patent and Trademark Office ("PTO") on April 19, 2000. *Id.* ¶ 2. Since then, the PTO has issued multiple registrations for those marks to Excelled.[3] The earliest of these marks is incontestable within the meaning of 15

---

[2] The factual background is more fully set forth in Excelled's SUF.

[3] (i) Reg. No. 2,790,074 (incontestable) ROGUE LEATHER BY REILLY OLMES for "men's, women's and children's clothing made in whole or in substantial part of leather, namely, coats, vests, shirts and pants" (issued: December 9, 2003), (ii) Reg. No. 3,260,143 ROGUE for "footwear" (issued: July 10, 2007); (iii) Reg. No. 3,346,559, ROGUE, for "men's, ladies' and children's clothing, namely, coats, vests, shirts and pants" (issued: December 4, 2007); and (iv) Reg. No. 3,945,523 ROGUE STATE for "men's, ladies' and children's clothing, namely, coats, jackets, vests, shirts and pants" (issued: April 12, 2011). *Id.* ¶ 3.

U.S.C. § 1065. Excelled's ROGUE Marks have become valuable assets and distinctive symbols of goodwill through fourteen years of continuous sales and marketing through department stores and clothing stores, including Nordstrom, Saks, Neiman Marcus, and Macy's. SUF ¶ 9. From 2000 through 2012, Excelled's sales of ROGUE clothing products to such stores have amounted to more than $30 million. *Id.*

### B. OBC Declared to the PTO Under Penalty of Perjury That It Has No Prior Rights In ROGUE Because it Used that Mark in Limited Trade Channels Other than Department Stores and Clothing Stores

Missing from OBC's submissions is any reference to its fatal admission to the PTO as to the limited scope of its rights in ROGUE. OBC is a beer company, whose clothing sales serve only to promote its beer. Excelled's claim of rights in ROGUE for clothing has been a matter of public record since April 2000, when it filed its first trademark application. OBC has had actual knowledge of Excelled's rights in the ROGUE Marks since at least July 2005, when its attorney found Excelled's ROGUE marks during a trademark search. SUF ¶ 16. OBC never applied to register "ROGUE" for clothing until August 24, 2005. *Id.* ¶ 15. And on March 13, 2006, the PTO refused registration of OBC's application on the ground that OBC's mark created a likelihood of confusion with Excelled's prior "ROGUE" mark. *Id.* ¶ 17. Significantly, when its application was refused, OBC's clothing had never been sold in department or clothing stores.

Seriously undermining its position, OBC admitted to the PTO that it had no prior right to sell clothing in department stores and clothing stores where Excelled sold its "ROGUE" goods. OBC declared that Excelled's use of ROGUE caused no likelihood of consumer confusion because OBC sells its clothing in a different trade channel only to promote its beer:

> ***OBC's clothing products are sold as marketing adjuncts to its primary product, beer.
> OBC consumers who purchase OBC's ROGUE almost always are very aware that the
> ROGUE brand on clothing products is complimentary [sic] to ROGUE beers***; indeed,
> the connection between the beer and the clothing (i.e., "brand loyalty") is one of the
> principal reason [sic] why consumers purchase ROGUE clothing.... *Id.* ¶ 19 (emphasis

added).

On June 26, 2007, the PTO again rejected OBC's application. SUF ¶ 20. OBC then

submitted another response, on July 23, 2007, in which it unequivocally admitted that its

ROGUE goods were sold only in a very limited trade channel (OBC's own brew pubs and

website) and that there was no likelihood of confusion:

> The clothing sold by OBC compliments [sic] and promotes its primary products, beer and
> other beverages (e.g., spirits such as rum). ***Where the subject application has been
> amended to delineated trade channels that are owned, operated and controlled by the
> Applicant, and where the goods are sold as compliments [sic] to and in promotion of
> Applicant's primary products, there is no likelihood that consumers would be confused
> by the mark of the '735 application.*** Applicant's brewing customers purchase
> Applicant's clothing because the clothing compliments [sic] and promotes the brewery
> products. Consumers know exactly what they are purchasing, and from whom they are
> purchasing it.

*Id.* (emphasis added).[4]

By admitting that Excelled's use of ROGUE on products sold in department stores and

clothing stores trade channels caused no confusion with OBC's mark, OBC admitted that it had

no prior rights in Excelled's trade channels. Similarly, by admitting that its own trade channels

were limited, OBC conceded that its use of ROGUE gave it no right of priority over Excelled

and no right to invade Excelled's exclusive trade channels.

### C.    OBC Made False Representations to the Court As to Alleged Use of ROGUE in Excelled's Department Store and Clothing Store Trade Channels

On May 14, 2012, despite its unequivocal representations to the PTO, OBC filed a

motion for leave to assert counterclaims for infringement against Excelled. The Court initially

rejected OBC's counterclaims, finding the allegations "too conclusory." Panko Decl.,[5] Ex.

---

[4] OBC further admitted that its "goods are sold in Applicant's premises to promote Applicant's primary businesses.
A consumer who visits a ROGUE brewpub or OBC's website and [sic] will know that the ROGUE clothing that is
offered for sale comes from the source as the beer." SUF ¶¶ 22-26. OBC's submission to the PTO were
accompanied by declarations attesting under penalty of perjury that the statements were true. *Id.* ¶ 13.
[5] "Panko Decl.," as used herein, refers to the Declaration of Ross Q. Panko (Docket Entry No. 67) submitted with
Excelled's Motion for Summary Judgment.

DDD, at 2:6.  The Court informed OBC that it must present specific facts showing that "despite agreeing that there was no likelihood of confusion at the time, and that [OBC was not] selling in the broader market … *[OBC in fact] sold in the broader market before [Excelled],* that [Excelled] is violating the trademark protection that [OBC has] and that there's a likelihood of confusion in that market."  SUF ¶ 46 (emphasis added).  During the hearing, OBC's attorney indicated that OBC's basis for its allegations was that it had made sales of ROGUE-branded apparel to "Fred Meyer Company."  *Id.* ¶ 47.

On July 27, 2012, OBC submitted a proposed amended counterclaim falsely alleging that OBC owned prior rights in ROGUE in *all trade channels* because "[b]y at least as early as 1998, OBC's ROGUE-branded clothing was being advertised, distributed and sold throughout the United States, including via the internet, at OBC's restaurants, **at major retail outlets, such as Fred Meyer,** at festivals and community events, via mail order, via telephone order and via its distributors."  SUF ¶ 48 (emphasis added).  Based on the misrepresentations as to major retail outlets, the Court allowed OBC to file an amended counterclaim, noting that OBC's allegations were "minimally sufficient" and that "we can revisit whether or not those allegations can be supported by the true facts" at the summary judgment stage.  *Id.* ¶ 51.

### D.   OBC Has No Evidence of ROGUE Sales in Department Stores or Clothing Stores Prior to 2011

OBC bases its priority claim on the allegation that from 1989 through 2000, it sold unspecified amounts of ROGUE clothing through:  (1) its "Rogue Meeting Halls" (i.e., its brewpubs) in Oregon and Washington (OBC's SOF[6] ¶¶ 13-16); (2) a network of beer distributors and brokers who sold or gave away ROGUE clothing along with ROGUE beer (OBC's SOF ¶¶

---

[6] "OBC's SOF," as used herein, refers to Defendant Oregon Brewing Company's Rule 56.1 Statement of Undisputed Facts (Docket Entry 59).

18-23); (3) beer festivals at which OBC'S ROGUE beer was sold or given away (OBC's SOF ¶¶ 32-33); (4) mail-order catalogs (OBC's SOF ¶ 24); and (5) grocery or alcoholic beverages stores such as Fred Meyer, CostPlus (World Market), Ashton Food Market, Brewery Collectibles, C&K Market, John's Grocery, Made in Oregon, and Oregon's Best (OBC'S SOF ¶ 27).

None of the alleged sales in the foregoing outlets provide a basis for priority because none are department stores or clothing stores and any ROGUE clothing sold by OBC in those outlets was intended to promote its beer. Indeed, prior to 2011, OBC had never sold its ROGUE clothing in department stores and clothing stores. SUF ¶¶ 53-64. OBC's President Brett Joyce contradicted the allegations in the counterclaim and admitted during his Rule 30(b)(6) deposition that OBC did not begin selling ROGUE clothing in those channels until 2011, when OBC entered into an agreement with Palmer Cash.[7]

Further, the two stores that OBC identified as supporting its claim to prior rights in Excelled's trade channels—Fred Meyer and CostPlus—are not department stores or clothing stores. Fred Meyer is a supermarket and CostPlus is a furniture store and both sell beer and wine. SUF ¶ 56. Moreover, OBC has produced no documents showing any sales of ROGUE clothing to Fred Meyer and CostPlus prior to 2000, and its Rule 30(b)(6) witness Brett Joyce had no personal knowledge of any such sales. Id. ¶ 57 & Panko Decl., Ex. OO, at 150:4-17. Jack Joyce, the founder of OBC, testified during a deposition in the Oregon state court litigation that

---

[7]     Q. Okay. Now, you weren't really selling in any department stores and clothing
        stores in 2007, were you? You weren't selling any Rogue clothing products in those stores? …
        Q. Right?
        A. No.
        Q. No, you were not, correct?
        A. That's correct.
        Q. Okay. And your Rogue products really weren't sold in any department stores
        until you entered into the license with Palmer Cash, isn't that correct? …
        A. I would say that is true, yes.

SUF ¶ 54 & Panko Decl., Ex. OO, at 67:7-16.

OBC's efforts to sell ROGUE clothing through Fred Meyer were minimal, and amounted to a failed experiment. *Id.* ¶ 58. Mr. Joyce could not even recall the date when OBC's scant sales of clothing to Fred Meyer supposedly occurred. *Id.*

Although OBC alleges that beer distributors and brokers sold ROGUE clothing prior to 2000, OBC's President could not identify any stores that, prior to the year 2000, sold OBC's ROGUE clothing and did not also sell its beer.[8] Moreover, no documents produced by OBC show sales of ROGUE clothing through department stores and clothing stores. SUF ¶¶ 60-61.

OBC's Statement of Undisputed Facts contains no evidence that prior to 2000 OBC ever advertised or marketed its ROGUE clothing via department store or clothing store trade channels. Instead, OBC alleges that prior to 2000, it advertised its ROGUE clothing via the Internet, over e-mail through its "100% Pure Rogue" newsletter and on-line newsletters, and through the creation of the Rogue Nation fan club. OBC's SOF ¶¶ 39-41, 43-44, 46.

## III.  ARGUMENT

### A.  Legal Standard

A party is entitled to summary judgment when there is no "genuine dispute as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). OBC cannot satisfy this standard because even if all the facts alleged by OBC are accepted as true, OBC is not entitled to summary judgment on any of the counts in Excelled's Complaint.

### B.  OBC Is Not Entitled To Summary Judgment as a Matter of Law On Any Counts Because Excelled Owns Prior Rights In the Mark ROGUE For Department Store and Clothing Store Trade Channels

OBC's motion is based on the false assumption that the Court can disregard OBC's prior

---

[8]    Q.  Can you -- as you sit here today, can you identify any location that sold Rogue clothing products prior to 2000, that did not also sell your beverage products?
       A.  No.
(SUF ¶ 59; Panko Decl., Ex. OO at 196:20-24).

conflicting statements to the PTO on the issue of priority.  By acquiescing in Excelled's use of ROGUE in department stores and clothing stores and by declaring to the PTO that such use created no confusion, OBC conceded that Excelled has priority in those trade channels.

The cases cited by OBC are inapplicable here.  In *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.*, 457 F.Supp. 1090 (S.D.N.Y. 1978), *aff'd* 607 F.2d 995 (2d Cir. 1979), both parties were selling cigars in the same trade channels.  Unlike OBC, the alleged senior user in Cuban Cigar never represented to the PTO under penalty of perjury that there was no likelihood of confusion because of the differences in trade channels.  Similarly, unlike OBC, the senior user was not selling its products merely to promote a business unrelated to cigars.  Moreover, unlike Excelled, the junior user had sought to trade upon the reputation and renown of the plaintiff and had encouraged the public to recognize its products as those of the plaintiff.

OBC asserts that "[i]n evaluating priority, the inquiry is whether the defendant proves priority in a particular geographic territory – not in a specific channel of trade within a geographic territory."  OBC's Br., at 4, n.2.  However, that directly contradicts the statements made by OBC to the PTO and the fact that differences in trade channels are often dispositive on priority issues.  *See, e.g., In Re The Shoe Works*, 6 U.S.P.Q.2d 1890, 1988 WL 252500, at *2-3 (TTAB 1988) (allowing registration of competing "PALM BAY" marks for clothing after applicant agreed to trade channel limitation reading "women's shoes sold solely through applicant's retail shoe store outlets").  OBC's alleged first use of ROGUE on promotional products provides no basis for a claim of priority in view of its admission that the difference in the parties' trade channels precludes any likelihood of confusion.

In a case with strikingly similar facts, the Seventh Circuit upheld a finding of infringement against a company that, just like OBC, attempted to invade another party's long

established trade channels.  *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store,*

*Inc.*, 735 F.3d 735 (7th Cir. 2013).  Kraft owned prior rights in the mark CRACKER BARREL

for cheese sold through grocery store channels.  *Id*. at 736.  Cracker Barrel used the same mark

on food products sold in its "country stores" adjoining its restaurants.  *Id*. at 737.  The parties

coexisted peacefully for years in their respective trade channels.  *Id*.  In 2012, however, Cracker

Barrel suddenly started selling its goods in grocery stores where Kraft had long-established prior

rights.  *Id*.  Kraft sued for trademark infringement, and the Circuit court ruled in Kraft's favor.

> It's not the fact that the parties' trade names are so similar that is decisive, nor even the
> fact that the products are similar (low-cost packaged food items). It is those similarities
> coupled with the fact that, if [Cracker Barrel] prevails in this suit, *similar products with
> confusingly similar trade names will be sold through the same distribution channel—
> grocery stores, and often the same grocery stores … Such similarities and overlap
> would increase the likelihood of consumer confusion detrimental to Kraft.*

*Id*. at 739.

If OBC were permitted to sell clothing products bearing the ROGUE mark in Excelled's

trade channels, the same type of confusion would ensue.  The fact that prior to 2000[9] OBC

promoted its beer sales by selling or giving away a few ROGUE clothing items through its pubs

and other promotional trade channels does not confer OBC with prior rights in Excelled's

department store and clothing store channels of trade.  Because Excelled's has operated

exclusively in its trade channels for 14 years and  any common law rights that OBC established

prior to Excelled's date of first use were necessarily and in perpetuity limited to OBC's

promotional trade channels, namely, OBC's own brewpubs, its website, and stores, distributors,

festivals or other outlets that also sold OBC's ROGUE beer.  When OBC suddenly expanded

into Excelled's channels of trade, as Cracker Barrel did in the *Kraft Foods* case, OBC committed

---

[9] OBC is incorrect to assert that the operative date with respect to the Court's analysis  of priority is 2003, when
Excelled obtained its first registration for a ROGUE mark.   Instead, the correct date is January 2000, when Excelled
first used its ROGUE Marks for clothing sold in department store and clothing store trade channels.  By at least
that date, Excelled established its prior common law rights in its ROGUE marks for those channels.

trademark counterfeiting, trademark infringement, and unfair competition in violation of federal law and common law.

None of the cases cited by OBC support its claim to prior rights and all are distinguishable.  Unlike OBC, none of the parties asserting priority in the prior cases had (a) previously admitted under penalty of perjury that there was no confusion due to the difference in the parties' trade channels; (b) acquiesced in the opposing party's rights in and use of the mark for at least seven years before asserting a claim of infringement; (c) obtained leave of court to assert infringement claims by making false assertions as to the scope of alleged prior use; or (d) used the mark in issue only on promotional products to boost unrelated products (e.g. beer). *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916) did not involve a dispute over trade channels, but instead dealt exclusively with the parties' respective rights to use the mark TEA ROSE for flour sold in distinct geographic areas. *Id*. at 419-20.  Similarly, *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114 (5th Cir. 1973) stands for the principle that two parties may use the same mark for similar goods, in separate geographic areas. *See id*. at 126-127. That case is irrelevant here as this is not a case about geography.  Rather, the issue is whether OBC has the right to sell ROGUE clothing in Excelled's long established trade channels.  As the *Kraft Foods* case shows, priority of rights in a particular trade channel is the determining factor in cases like this, where the parties have used the same mark for similar goods, but in distinct channels of trade.

OBC also argues that "[a] single, bona fide use of [a] mark is sufficient to establish trademark priority."  OBC's Br., at 5 (citing *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 15 F. Supp. 2d 389 (S.D.N.Y. 1998)).  However, OBC has admitted than any prior rights it has are limited to a narrow trade channel.  Neither *Lane* nor any of the other cases cited by OBC

awarded priority to a party whose priority claims conflict with prior sworn statements.

OBC argues that "in determining priority, a court may rely on activities relating to a mark other than sales of the products at issue, including promotional activities under the brand and other activities that publicize the mark." OBC's Br., at 5 (citing *Housing & Servs., Inc. v. Minton*, No. 97 Civ. 2755, 1997 U.S. Dist. LEXIS 8883, at *10-12 (S.D.N.Y. June 24, 1987) (and other cases)). However, OBC admitted to the PTO in 2007 that its use of ROGUE on promotional products established no rights in Excelled's trade channels. Neither *Minton* nor any of the other cases cited by OBC involved a priority dispute as to specific trade channels.

OBC makes no mention of its prejudicial admissions to the PTO in its brief. Its willful blindness to this central issue is but another indication that OBC filed its motion in bad faith and solely to cause Excelled to suffer undue burden and expense. As shown in the report of former Trademark Trial and Appeal Board Judge Gary Krugman ("Krugman"), if OBC had not agreed to a trade channel limitation, the PTO never would have approved its application, and OBC would not have received a trademark registration. Panko Decl., Ex. Q at ¶ 47; *see also In Re The Shoe Works*, 6 U.S.P.Q.2d 1890, 1988 WL 252500, at *2-3 (T.T.A.B. 1988) (allowing registration of competing "PALM BAY" marks for clothing only after applicant agreed to trade channel limitation reading "women's shoes sold solely through applicant's retail shoe store outlets"). OBC admitted it was not selling ROGUE clothing in department store and clothing store channels in 2007 because it wanted to obtain a registration. OBC cannot be allowed to make contrary statements now after having sat idly by for twelve years while Excelled developed its ROGUE marks in department store and clothing store trade channels.

### C.     OBC's Claim Of Priority Is Barred By Statute and Equitable Defenses

Although OBC has moved for summary judgment only on Excelled's claims, its allegation of prior rights simply mirrors the allegations in OBC's counterclaims. However,

OBC's priority claim is barred by 15 U.S.C. § 1064, which precludes attacks on registrations that are more than five years old, and by the equitable doctrines of laches, acquiescence, and estoppel.

Excelled's registration for ROGUE LEATHER BY REILLY OLMES (Reg. No. 2,790,074) was over five years old when OBC first alleged prior rights in Excelled's trade channels. Such registrations may only be challenged on the grounds specifically set forth in Section 14 of the Lanham Act. *See* 15 U.S.C. § 1064; *see also Imperial Tobacco Ltd. v. Phillip Morris, Inc.*, 899 F.2d 1575, 1579 n.5 (Fed. Cir. 1990) ("Section 1064(c) is, in effect, a five year time limit barring certain attacks on a registration.") (citation omitted); 3 *McCarthy on Trademarks and Unfair Competition* § 20:55 (4th ed.) ("If a challenged registration is more than five years old, a cancellation count based on likelihood of confusion under § 2(d) will be dismissed for failure to state a claim."). Moreover, Excelled's registration for ROGUE LEATHER BY REILLY OLMES is incontestable, and incontestable registrations may not be cancelled except on very limited grounds, none of which apply here. 15 U.S.C. § 1065.[10] Excelled is still selling in the same trade channels today as in 2007, when OBC admitted that Excelled's use of ROGUE on clothing sold in department stores and clothing stores did not infringe any rights owned by OBC. By making this concession, OBC also acknowledged that there would be confusion if it expanded into Excelled's trade channels. Having commenced selling clothing under counterfeit marks in such stores, OBC cannot now object to Excelled's claims for infringement.

OBC's claim of priority is also barred by laches because (1) OBC unreasonably delayed

---

[10] Further, under the *Morehouse* doctrine, Excelled's registrations that are less than five years old are also immune from cancellation because there is no added damage in that the goods in the later registrations are essentially the same as those in its incontestable registration. *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F. 2d 881, 884 (C.C.P.A. 1969).

before claiming priori rights in Excelled's trade channels; and (2) Excelled is severely prejudiced by this delay. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996). Excelled is entitled to a presumption of laches because OBC's period of delay was longer than the six-year statute of limitations.[11]  OBC cannot rebut this presumption. OBC should have known of Excelled's claim of rights in 2000 when Excelled filed its first application and OBC admitted having actual knowledge of Excelled's rights in the mark ROGUE at least as early as 2005. However, OBC never asserted priority or challenged Excelled's rights until 2012, when it filed the counterclaim in this action. OBC's seven to twelve year delay is unconscionable and its claim of priority is barred by laches as a matter of law. *See Trs. Of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 753 (S.D.N.Y. 1997) (finding laches where plaintiff delayed three and a half years before objecting); *Conopco, Inc.*, 95 F.3d at 190 (finding laches where plaintiff delayed more than five years before filing suit); *Am. Dietaids Co. v. Plus Prods.*, 412 F. Supp. 691, 695 (S.D.N.Y.) (finding laches where plaintiff delayed seven years before objecting), *aff'd*, 551 F.2d 299 (2d Cir. 1976). During the period of delay, Excelled expended significant resources to develop, advertise, and promote its ROGUE clothing business. Excelled has been severely prejudiced by OBC's delay. The bringing of such a frivolous claim makes this an exceptional case.

OBC's priority claim also is barred by the doctrine of acquiescence because Excelled has satisfied all three elements of that defense.[12]  OBC represented to Excelled and the PTO that it has no objection to Excelled's use of ROGUE. Moreover, its seven-year delay was not

---

[11] *See Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 798 (S.D.N.Y. 1997) ("In a suit under the Lanham Act, a presumption of laches applies after the expiration of the analogous state statute, the New York six-year statute of limitations") (citing *Conopco*, 95 F.3d at 191).

[12] Acquiescence requires proof of three elements: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) (quoting *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002).

excusable and Excelled has been prejudiced by the delay.

OBC is also barred from asserting priority under the doctrine of judicial estoppel, which provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005) (citation omitted). "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adelphia Recovery Trust*, 634 F.3d 678, 695-96 (2d Cir. 2011) (citations omitted).

All of the elements of judicial estoppel are satisfied here. First, OBC's claim of priority in Excelled's department store and clothing store channels is "clearly inconsistent" with the position it took before the PTO, where it admitted under penalty of perjury that its rights were limited to its brew pubs and own website and did not extend to OBC's trade channels. Second, OBC's prior position was adopted by the PTO, and the PTO "accepted the accuracy" of OBC's statement in approving for publication OBC's application with the trade channel limitation. Third, OBC would derive an unfair advantage if it is allowed to argue in this lawsuit that it owns prior rights in ROGUE for clothing sold in department store and clothing store channels. This is precisely the type of conduct that the doctrine of judicial estoppel prohibits.[13]

---

[13] *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("A litigant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order win a second victory."). Moreover, courts have applied the doctrine of judicial estoppel to prevent injustice like this in analogous trademark cases. *See Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005) ("[w]hether we view the district court's treatment of UTN's prior representations about the commercial availability of marks containing the word 'freedom' as judicial estoppel, an admission, waiver, or simply hoisting UTN by its own petard …. UTN's owns statements and actions … undermine UTN's belated attempt to establish likelihood of confusion"); *Top Tobacco,*

**D.      OBC Is Not Entitled To Summary Judgment as to Any Counts Because
There is No Valid Claim of Unclean Hands or Fraud**

OBC mentioned the word "fraud" for the first time in the unclean hands section of its

Motion for Summary Judgment.  Despite its flagrant inequitable conduct, OBC now asserts that

the unclean hands doctrine should bar Excelled from challenging OBC's acts of counterfeiting

and infringement.  However, the sole basis for this assertion is the unfounded allegation that

Excelled made false statements to the PTO concerning some of the clothing items listed in some

of its trademark registrations.  As shown in the accompanying Declaration of Excelled's

President William Goldman ("Goldman 1/14 Dec."), OBC's claims are false.  Even if they were

accepted as true, however, they would provide no basis for an unclean hands defense.

The standard for proving fraud on the PTO is extraordinarily high.  *See In re Bose Corp.*,

580 F.3d 1240, 1243 (Fed. Cir. 2009) ("A party seeking cancellation of a trademark registration

for fraudulent procurement bears a heavy burden of proof.").  Indeed, "the very nature of the

charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence.  There

is no room for speculation, inference or surmise and, obviously, any doubt must be resolved

against the charging party." *Id.* (citation omitted).  To prove fraud, it must be shown that the

party ***knew*** that its representation to the PTO was false, and that it willfully intended to deceive

the PTO.  *See id.* at 1245 ("[A] trademark is obtained fraudulently under the Lanham Act only if

the applicant or registrant knowingly makes a false, material representation with the intent to

deceive the PTO.").  "There is no fraud if a false misrepresentation is occasioned by an honest

misunderstanding or inadvertence without a willful intent to deceive." *Id.* at 1246.  Further, it is

well-settled that fraud claims are ill-suited for summary judgment because they require proof of

---

*L.P. v. N. Atl. Operating Co.*, No. 06 C 950, 2007 WL 1149220, at *4 (N.D. Ill. Apr. 17, 2007) ("Based on Top
Tobacco's statements to the USPTO, it is difficult to reach any conclusion other than it had to know before it filed
this case that its claims lacked merit. Its change of positions before this Court needlessly increased the costs of
defending this suit.").

subjective intent, which is fact intensive.[14]

### 1.    OBC Never Pled Fraud, and Thus That Issue Is Not Properly Before the Court

Rule 9(b) of the Federal Rules of Civil Procedure requires that the issue of fraud be pled with "particularity." Fed. R. Civ. P. 9(b); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994). OBC's Answer to the Complaint contains no reference to fraud whatsoever. Although in some circumstances acts of fraud may support an affirmative defense of unclean hands, the fact that a defendant styles the defense as "unclean hands" instead of "fraud" does not absolve it of the obligation to plead fraud with particularity. *See XILINX, Inc. v. Altera Corp.*, No. C 93-20409 RMW (EAI), 1993 WL 767688, at *2 (N.D. Cal. Oct. 25, 1993) ("the pleading requirements of Rule 9(b) appl[y] to the defense of unclean hands if the allegation of unclean hands involve[s] the elements of fraud") (*citing Intel Corp. v. Hyundai Elecs. Am. Inc.*, 692 F. Supp. 1113, 1117 (N.D. Cal. 1987)). Because OBC has failed to plead fraud, let alone plead it with particularity, its motion seeking summary judgment on that basis must be denied.

### 2.    Excelled Made No False Representations to the PTO

OBC claims that Excelled did not continuously sell some items such as pants and shirts listed in some of Excelled's registrations. These allegations are based solely on the fact that, due to the passage of time, Excelled can no longer identify with specificity every single product it shipped and every single ROGUE mark that was used on each of the products. However, Excelled has produced voluminous shipping records showing continuous sales of its products from 2001 through 2012. And it has provided representative samples showing sales of all of the products listed. Excelled's President William Goldman confirmed in his declaration that the statements made by Excelled to the PTO are true. *See* Goldman 1/14 Dec. His declaration is

---

[14] *See Asian & W. Classics B.V. v. Selkow*, 92 U.S.P.Q.2d 1478, 1480 (TTAB 2009) ("The factual question of intent is particularly unsuited to disposition on summary judgment").

based on available documents and his own recollection that the products were sold under the ROGUE marks during the relevant time periods.  Because of OBC's delay in raising this issue, Excelled should not be penalized because it lacks documents identifying the specific details of every sale made over a fourteen year period of time.

**a.     Excelled Made No Material False Statement as to its Registrations for the Marks ROGUE and ROGUE LEATHER BY REILLY OLMES**

OBC does not dispute the fact that Excelled has used its marks continuously on coats. Rather, it bases its fraud claim on the unfounded accusation that Excelled did not use the mark at certain times on some of the other goods in its registrations.

OBC first alleges that Excelled's November 2004 application to register the mark ROGUE is fraudulent because it "was not using the mark ROGUE on **pants, shirts, or children's clothing**." (OBC's Br. at 16; OBC's SOF ¶¶ 63, 64, 67) (emphasis in originals). OBC further alleges that "the evidence is that Excelled never used the mark on children's clothing before November 2004, and had not used the mark on shirts in 2004."  OBC's Br. at 16.

OBC also alleges that Excelled's Declaration of Use and Incontestability Under Sections 8 and 15 for its ROGUE LEATHER BY REILLY OLMES mark contained false representations because Excelled "did not use the mark ROGUE LEATHER BY REILLY OLMES continuously on **children's clothing made in whole or in substantial part of leather** between 2004 and December 9, 2009; it did not use the mark on **vests made in whole or in substantial part of leather** between 2005 and December 9, 2009; it did not use the mark on **pants made in whole or in substantial part of leather** between 2006 and December 9, 2009; and it did not use the mark on **shirts made in whole or in substantial part of leather** between 2004 and December 9, 2009.  OBC's Br. at 18; OBC's SOF ¶¶ 65, 70 (emphasis in originals).

However, these allegations are contradicted by Mr. Goldman in his declaration.

17

Goldman 1/14 Declaration ¶¶ 9-17.  While Excelled does not have records showing each product and label that was sold under a particular style number, Excelled has produced numerous representative samples of documents showing sales of all the goods under the marks ROGUE and ROGUE LEATHER BY REILLY OLMES.  *Id.* ¶ 16, Ex. F.  Excelled also has shown that it has used its mark on children's sized clothing.  *Id.* ¶ 17, Ex. G.

> **b.      Excelled Made No Material False Statement as to its Registration for the Mark REILLY OLMES ROGUE LEATHER**

Excelled did not cite or rely on its registration for REILLY OLMES ROGUE LEATHER in this case.  Therefore, OBC cannot be prejudiced in any way by that registration.  Nonetheless, OBC also alleges that Excelled's Declaration of Use and/or Excusable Nonuse of Mark in Commerce Under Section 8 for the mark REILLY OLMES ROGUE LEATHER contained false representations because Excelled "did not use the REILLY OLMES ROGUE LEATHER mark on **children's clothing, vests, pants** or **shirts** between 2004 and February 23, 2010."  OBC's Br. at 19; OBC's SOF ¶¶ 66, 73.  Again, the Goldman Declaration refutes OBC's allegations.  Goldman 1/14 Dec. ¶¶ 9-15.  Moreover, a label showing the manner in which the mark was used is attached to  Mr. Goldman's Declaration.  *Id.*, Ex. D.

> **c.      OBC Has Not Proven the Element of Deceptive Intent**

Even if OBC could prove that Excelled was not selling some of the specific clothing items listed in its registrations, which it cannot, OBC cannot prove fraud because there is no evidence (let alone clear and convincing evidence) that Excelled made any misstatements ***with knowledge that the statements were false***, or that Excelled acted with a willful intent to deceive the PTO.  Thus, even if Excelled's submissions to the PTO contained incorrect information, that does not amount to fraud.  OBC cites no case in which a court found fraud in the circumstances presented here.

In its brief, OBC incorrectly states that the standard for proving fraud on the PTO is that the registrant "knew or should have known" that the representation to the PTO was false.  OBC's Br. at 14 (citing *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 270 (2d Cir. 2011)).  That case does not support this contention.[15]  Moreover, in *In re Bose Corp.*, issued in 2009, the Federal Circuit expressly rejected that standard.  *In re Bose Corp.*, 580 F.3d at 1244 (noting that "[b]y equating 'should have known' of the falsity with a subjective intent, the Board erroneously lowered the fraud standard to a simple negligence standard.").  The *Bose* court therefore reiterated that "a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant ***knowingly*** makes a false, material representation ***with the intent to deceive the PTO.***"  *Id.* at 1245 (emphasis added).

The Federal Circuit held that Bose did not commit fraud on the PTO even though its President knew the company had not sold the relevant goods in commerce, but the President had a good faith belief that Bose's repair and shipment of those goods were sufficient "use in commerce" under the Lanham Act:

> Mr. Sullivan, who signed the application, ***knew that Bose had stopped manufacturing and selling audio tape recorders and players at the time the Section 8/9 renewal was filed***.  Therefore, the statement in the renewal application that the WAVE mark was in use in commerce on all the goods, including audio tape recorders and players, was false. … However, Mr. Sullivan explained that in his belief, Bose's repairing of the damaged, previously-sold WAVE audio tape recorders and players and returning the repaired goods to the customers met the "use in commerce" requirement for the renewal of the trademark…. ***There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive.***  Sullivan testified under oath that he believed the statement was true at the time he signed the renewal application.  Unless the challenger can point to evidence to support an inference of deceptive intent, it has failed to satisfy the clear and convincing evidence standard required to establish a fraud claim.  We hold that Bose did not commit fraud in renewing its WAVE mark and the Board erred in canceling the mark in its entirety.

---

[15] The *Patsy's Italian Restaurant* court incorrectly stated that the standard for fraud enunciated in *Bose* was "should have known."  As detailed herein, that is not correct, since the *Bose* court expressly held that proof of fraud requires evidence that the registrant ***knowingly*** made a false, material representation with the intent to deceive the PTO.

*Id.* at 1246 (emphasis added).  The court explained that the public interest would not be served by cancelling a registration where the registrant used the mark on some but not all the goods in a registration.  *Id.* at 1247 ("When a trademark registrant fulfills the obligation to refrain from knowingly making material misrepresentations, "[i]t is in the public interest to maintain registrations of technically good trademarks on the register so long as they are still in use.").

Other courts have rejected fraud claims where a misstatement in a registration document was occasioned by an inadvertent error.  In *Edison Brothers Stores, Inc. v. Cosmair, Inc.*, 651 F. Supp. 1547 (S.D.N.Y. 1987), Cosmair alleged that Edison committed fraud by claiming use of a mark on "junior's clothing, namely pants, shirts, tops and jackets," when the mark had only been used on one item (pants) when the application was filed.  *Id.* at 1563.  The court concluded that although the statements in Edison's PTO filing were inaccurate, this did not amount to fraud because "[s]tatements of honest, but perhaps incorrect[] belief or innocently inaccurate statements of fact are insufficient" to prove fraud, and "plaintiff's testimony at trial demonstrated that the erroneous statement on its service mark application was made innocently."  *Id.* (internal citations and quotation marks omitted).[16]

As in the cited cases, there is no basis for a fraud claim here.  Excelled has sold all of the goods at issue, namely, vests, pants, shirts, and children's clothing under its ROGUE Marks.  Goldman 1/14 Dec. ¶ 10.  It is Mr. Goldman's good faith belief at the time he signed the PTO documents that all of the statements contained in the declarations are true and the company had sold all of those goods under the marks at issue.  *Id.* ¶ 9.  While Excelled does not have records showing each product and label that was sold under a particular style number, Excelled has

---

[16] *See also Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877-78 (8th Cir. 1994) ("Proof that false statements were made to, or that facts were withheld from, the PTO, however, is not enough to show fraud for purposes of canceling a mark ....  In order to show that an applicant defrauded the PTO the party seeking to invalidate that mark must show that the applicant intended to mislead the PTO"); *Asian & W. Classics B.V.*, 92 U.S.P.Q.2d at 1479 ("mere negligence … is not sufficient to infer fraud or dishonesty").

produced numerous representative samples of documents showing sales of all the goods under the marks ROGUE and ROGUE LEATHER BY REILLY OLMES. *See id.* ¶ 16 & Ex. F. Excelled also has shown that it has used its mark on children's sized clothing. *Id.* ¶ 17 & Ex. G.

Even if some clothing items were not being sold under some of Excelled's marks, there is no basis for asserting that statements by Excelled were made with knowledge of their falsity or with an intent to deceive the PTO.

The cases relied on by OBC are distinguishable. For example, two of OBC's cases involved egregious acts of fraud that are obviously not present here. *See, e.g., Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 208 U.S.P.Q. 421 (S.D.N.Y. 1980) (the registrant filed documents to maintain its trademark registration even though the registrant had made no use of the mark whatsoever for "a generation"); *Gen. Car & Truck Leasing Sys. Inc. v. General Rent-A-Car Inc.*, 17 U.S.P.Q.2d 1398 (S.D. Fla. 1990) (cancelling the registrant's registration in its entirety where the registrant filed documents with the PTO claiming use of a mark, but later admitted that it "had never been involved in rentals of aircraft and boats" at all). Another case relied on by OBC--*Mister Leonard, Inc. v. Jacques Leonard Couture, Inc.*, 23 U.S.P.Q.2d 1064 (TTAB 1992)—was issued 17 years before *Bose*, and is not binding on this Court. Further, the outcome in *Mister Leonard* was highly unusual, and in most cases, courts and the Trademark Trial and Appeal Board do not cancel registrations for fraud unless the evidence of fraud is overwhelming and egregious.

### E.    OBC's Fraud Claims Are Barred By Equitable Defenses

OBC's unclean hands and fraud allegations are barred by Excelled's statute of limitations and laches defenses. "Under New York law, the statue of limitations for fraud is the greater of six years from the time of accrual or two years from the time the plaintiff discovered the fraud or could with reasonable diligence have discovered it." *Soward v. Deutsche Bank AG*, 814 F. Supp.

2d 272, 279 (S.D.N.Y. 2011) (citing N.Y. C.P.L.R. § 213(8)).  Further, laches is a valid defense

to an action seeking cancellation of a federal trademark registration.  *See Pro-Football, Inc. v.*

*Harjo*, 415 F.3d 44, 48 (D.C. Cir. 2005) (Section 1064(3) of the Lanham Act "does not bar the

equitable defense of laches in response to section 1064(3) cancellation petitions").

      OBC could have raised its fraud claim as early as 2004 or 2005 with regard to Excelled's

ROGUE application.  The oldest PTO submission about which OBC alleges fraud was filed in

2004, and the others were filed in 2009 and 2010.  In addition, OBC has had actual knowledge of

Excelled's rights in the ROGUE Marks since at least 2005, when its attorney discovered the

marks during a trademark availability search.  In addition, OBC had detailed discussions with

Excelled about its goods and registrations in 2007, and signed an agreement that specifically

mentions the goods.  Goldman 1/14 Dec. ¶¶ 18-23.  Further, beginning in 2011, the parties were

involved in litigation in Oregon, and Excelled filed its Complaint in this action in 2012.  OBC

never raised the issue of fraud after discovering Excelled's ROGUE registration in 2005, nor

during the Oregon case or in its counterclaim in this action.  Instead, OBC delayed many years

before finally asserting fraud for the first time in its summary judgment motion last month.

Goldman 1/14 Dec. ¶¶ 18-23.  OBC's nearly seven-year delay was unreasonable as a matter of

law.  Excelled has been severely prejudiced by OBC's delay because documents from 2004 that

could have been used to rebut OBC's claim can no longer be retrieved.  Goldman Dec. ¶ 27.

This type of prejudice is a basis for finding laches.  *See Avon Prods. v. S.C. Johnson & Son, Inc.*,

984 F. Supp. 768, 799 (S.D.N.Y. 1997) (finding prejudice and laches where, because of the delay

in bringing action, "Avon has been unable to obtain certain evidence, including a 1987 mailing

to sales representatives instructing them not to market SSS as an insect repellent that might have

been available had S.C. Johnson brought suit earlier").  Consequently, OBC's allegation of fraud

is barred by the statute of limitations and laches.  OBC's fraud claim is also barred by the

doctrines of acquiescence and judicial estoppel for the reasons set forth above in Section C.[17]

### F.    OBC Is Not Entitled to Judgment as a Matter of Law on Excelled's New York Deceptive Practices Act Claim

OBC alleges that Excelled's claim for violation of Section 349 of the New York

Deceptive Practices Act (Count IV) should be dismissed because Excelled has failed to prove

harm to consumers.  OBC's argument fails because its acts of counterfeiting and infringement in

fact caused substantial harm to consumers.  Indeed, it is axiomatic that trademark infringement

involves harm to the public because consumers are being deceived by the defendant's use of a

confusingly similar mark:

> When a business sues for trademark infringement "the plaintiff is acting, not only
> in its own interest, but in the public interest." While the consumer is not a directly
> participating litigant, the consumer's state of mind is paramount. In this sense,
> protection of trademarks is merely a facet of consumer protection. The plaintiff in
> trademark litigation could be characterized as a "vicarious avenger" of consumer
> interests.

1 *McCarthy on Trademarks and Unfair Competition* § 2:33 (4th ed.) (quoting *Gen. Baking Co. v.*

*Gorman*, 3 F.2d 891, 893 (1st Cir. 1925); *see also Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S.

844, 854 n.14 (1982) (trademark infringement harms the public because it "deprives consumers

---

[17] OBC asserts that its fraud argument is bolstered by the expert testimony of Kenneth B. Germain.  OBC's Brief, at 20.  In fact, Mr. Germain's testimony does nothing to support OBC's baseless theory, and it is inadmissible because, *inter alia*, his report consists entirely of inadmissible legal opinions and argument, and it is based on an inaccurate recitation of the facts.  *See* Docket Entry No. 66 (Excelled's Memorandum in Support of Plaintiff's Motion in Limine to Strike and Exclude the Report, Testimony and Opinions of Mr. Kenneth Germain in Connection with the Summary Judgment Motions in This Case).

Finally, even if the Court found a basis for cancelling Excelled's registrations, that would not preclude Excelled from prevailing on its statutory claims for unfair competition under 15 U.S.C. 1125(a) and on its common law trademark infringement claims.  This is because the proper remedy for fraud is cancellation of a party's trademark registrations, and does not alter a party's common law rights in a mark.  *See In re Bose Corp.*, 580 F.3d at 1247 n.3 (noting that "even thought the Board cancelled the registration of the WAVE trademark, it continued to analyze Bose's common law right in the mark").  Thus, even if Excelled's federal trademark registrations for its ROGUE Marks were cancelled, this would not affect its ownership of common law rights in its ROGUE Marks dating back to 2000.  And as detailed *supra*, Excelled owns prior common law rights over OBC in the mark ROGUE for clothing sold in department store and clothing store trade channels.  Accordingly, even if OBC could prove fraud— which it cannot—it would not be entitled to summary judgment on Excelled's statutory claims for unfair competition under 15 U.S.C. 1125(a) and on its common law claims.

of their ability to distinguish among the goods of competing manufacturers"). Recognizing this principle, courts in the Second Circuit have held that acts of trademark counterfeiting and infringement constitute a violation of Section 349 because those acts harm the public. *See Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781 (CM), 2009 WL 1675080, at *16 (S.D.N.Y. June 10, 2009) (granting summary judgment to Burberry on its Section 349 claim because"[b]y selling infringing products to third party retailers located in New York, [defendant] placed into the stream of commerce goods likely to confuse consumers as to their true source of origin"); *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 301-302 (S.D.N.Y. 2002) (finding violation of Section 349 because "[b]y intentionally using the '05' designation in a manner confusingly similar to GTFM's use of the '05' trademark, and causing actual confusion, Solid engaged in a consumer-oriented act that was misleading in a material way").

The Court should reach the same conclusion here. By using the mark "ROGUE" for clothing sold in Excelled's established trade channels—department stores and clothing stores—OBC's willful acts of counterfeiting and infringement present a likelihood that consumers will be deceived and confused. OBC's acts are precisely the type of conduct proscribed by Section 349 of the New York Deceptive Practices Act. Accordingly, OBC's motion for summary judgment on this claim must be denied.

### G.   OBC's Bad Faith Filing of Its Baseless Summary Judgment Motion Is Sanctionable, and OBC Should Be Ordered to Pay Excelled Its Attorneys' Fees

Excelled is entitled to an award of its attorneys fees incurred to defend against OBC's baseless summary judgment motion and its counterclaim, which were clearly filed in bad faith solely to impose burden on Excelled and multiply its litigation costs. Attorneys' fees are warranted pursuant to the Lanham Act's fee provision, 15 U.S.C. § 1117(a), the general fee-

shifting statute, 28 U.S.C. § 1927, and the Court's inherent power to award fees.[18]  OBC's claim to prior rights in the mark ROGUE for clothing sold in department stores and clothing stores contradicts prior sworn representations it made to the PTO and the Oregon state court.  Further, OBC induced this Court to allow its counterclaim by deliberately and falsely representing that it had pre-2000 sales of ROGUE clothing in Excelled's trade channels.  Then, after the Court allowed OBC's counterclaim to go forward, OBC ignored the Court's instruction to present evidence of sales in Excelled's trade channels, and filed a motion for summary judgment on an entirely new theory, for which OBC knows there is no evidentiary support.  OBC also used its bad faith counterclaim as a basis for pursuing a "scorched earth" approach to discovery, in which it served over 200 document requests, deposed Excelled's Rule 30(b)(6) witness four times, and imposed needless burden and expense on Excelled.  The Court should not condone OBC's bad faith conduct, and should award Excelled its attorneys' fees.

## IV.    CONCLUSION

For all of the foregoing reasons, Excelled respectfully requests that the Court deny OBC's motion for summary judgment on all the counts in Excelled's Complaint, and that it award Excelled its attorneys' fees.

---

[18] *See Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 786 (2d Cir. 1988) ("In this circuit, exceptional circumstances warranting an award of attorneys' fees include cases where the losing party had either prosecuted or defended an action in bad faith."); *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983) (awarding fees where claims had no real substance and where "substantial overtone" of the case warranted "an inference that this suit was initiated as a competitive ploy"), *aff'd*, 742 F.2d 1437 (2d Cir. 1984); *Diamond Supply Co. v. Prudential Paper Prods. Co.*, 589 F. Supp. 470, 476 (S.D.N.Y. 1984) (awarding fees based on finding that suit was "so patently baseless" that it presented an exceptional case).

Dated: New York, New York
January 17, 2014

ARENT FOX LLP

By _____

Bernice K. Leber, Esq. (BL1285)
Temitope K. Yusuf, Esq. (TY0216)
ARENT FOX LLP
1675 Broadway
New York, New York 10019
(212) 484-3900

and

Michael A. Grow (MG-1029)
(*admitted pro hac vice*)
Alec P. Rosenberg
Ross Q. Panko
ARENT FOX LLP
1717 K Street, NW
Washington, DC 20036
(202) 857-6389

*Attorneys for Plaintiff*
*Excelled Sheepskin & Leather Coat Corp.*