**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EXCELLED SHEEPSKIN &
LEATHER COAT CORP.

                      **Plaintiff,**

            - against -

OREGON BREWING COMPANY

                    **Defendant.**

**REPORT AND**
**RECOMMENDATION**

**12-CV-1416 (GBD) (RLE)**

To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:

## I.    INTRODUCTION

Plaintiff Excelled Sheepskin and Leather Coat Corporation ("Excelled") commenced this trademark infringement action against Defendant Oregon Brewing Company ("OBC") pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* (Doc. No 1.) On August 5, 2014, the Honorable George B. Daniels granted summary judgment in favor of Excelled's trademark infringement, counterfeiting, and false designation and unfair competition claims. He also dismissed OBC's counterclaim for trademark infringement, OBC's breach of contract claim, and Excelled's unfair trade practices claim under the New York General Business Law. (Doc. No. 109.) On August 20, 2014, Judge Daniels referred this case to the undersigned for an inquest on damages and injunctive relief. (Doc. No. 110.)

The Parties appeared before the Court on September 10, 2015, and raised the issue of whether OBC was entitled to a jury trial based on Excelled's election of damages under 15 U.S.C. § 1117. The Court ordered the Parties to brief: 1) whether Excelled may seek damages

under section 1117(a), (b), and (c); 2) whether Excelled is restricted to recovery under section 1117(c); and 3) in what circumstance, if any, is OBC's right to a trial by jury implicated.

For the reasons that follow, I recommend that the Court find that OBC's jury trial right is not implicated, and enter judgment for Excelled in the amount of **$1,000**, plus reasonable attorneys' fees to be determined upon application.  I also recommend that the Court enter a permanent injunction against OBC.

## II.  BACKGROUND

### A.  Factual Background

Excelled is an apparel company, founded in 1927, that began selling clothing with the ROGUE mark in department and clothing stores in January 2000.  (Excelled Statement of Undisputed Facts ("SUF") at 1-2.)  Excelled first registered its ROGUE mark with the United States Patent and Trademark Office ("PTO") in April 2000, and has since obtained additional trademarks.  (*Id.* at 2.)  OBC is a commercial brewery that was founded in 1988.  (OBC SUF at 2.)  Since 1989, OBC has sold alcohol beverages, clothing, and merchandise bearing the ROGUE trademark through its brewpubs, distillery pubs, brewery, bed and breakfasts, and hop farm.  (*Id.* at 3.)  In 1995, retail superstores Fred Meyer and Cost Plus began selling OBC's ROGUE clothing.  (Summary Judgment Decision ("Summ. J.") at 4.)

OBC filed an application with the PTO on August 24, 2005, to register its ROGUE mark for clothing.  (*Id.* at 5.)  On March 13, 2006, the PTO responded, stating that "potentially conflicting marks in a [sic] prior-filed pending applications may present a bar to registration due to a possible likelihood of confusion."  (*Id*) (internal citations omitted).  The PTO included in its response information regarding an application owned by Excelled, and an application owned by

Chinook Trading Company ("Chinook"), but assigned to Excelled. (*Id.*) The Parties entered into a settlement agreement to "use their respective marks in well-defined ways" so that there would be no likelihood of confusion. (*Id.*) OBC limited the goods described in the PTO application to "clothing, namely t-shirts, sweatshirts, polo shirts, turtlenecks, aprons, hats and not including jackets, coats and skirts." (*Id.*) According to OBC, Excelled agreed to amend its PTO registration to include only "men's, women's and children's clothing, namely, jackets, coats and skirts." (*Id.*)

On June 26, 2007, the PTO issued a Notice of Suspension, determining that OBC's amendment was not enough to overcome the likelihood of confusion. (*Id.* at 6.) The PTO explained that the application did not "contain any limitations regarding trade channels for the goods" and it therefore assumed that OBC sold clothing "everywhere that it is normal for such items[,]" such as clothing and department stores. (*Id.*) In response, OBC further limited its application to clothing sold in its brewpubs and websites, and used in promotion of its brewing and beverage businesses. (*Id.*) The PTO approved OBC's trademark application on January 8, 2008. (*Id.*)

OBC's clothing expanded to other retail stores and retail websites but, prior to 2011, OBC did not sell clothing in any location that did not also sell its beverage products. (*Id.* at 4.) In 2011, OBC began selling its ROGUE brand clothing in department and clothing stores, as well as on eBay and Amazon websites. (*Id.*)

**B.     Procedural History**

Excelled commenced this declaratory judgment action to preclude OBC from using its ROGUE trademark in trade channels other than OBC's brewpubs and website for promotional

purposes. (Comp. at 13-14; *see also* Summ. J. at 1.)  OBC asserted counterclaims for trademark

infringement, unfair competition, false designation of origin, and trademark cancellation under

the Lanham Act.  It also asserted common law trademark infringement and breach of contract

counterclaims.  (OBC SUF at 2.)

On August 5, 2014, Judge Daniels issued a decision on the Parties' cross-motions for

summary judgment.  He found it undisputed that Excelled first used and registered its ROGUE

mark in the department and clothing store markets.  (*Id.* at 10.)  Because OBC did not provide

evidence for a reasonable juror to conclude that it had priority of the mark for the sale of goods

in clothing and department stores, all of its trademark counterclaims were dismissed.  (*Id.* at 11.)

Judge Daniels also rejected OBC's argument that Excelled's priority rights in the mark

were extinguished by the Trademark Transfer Agreement ("TTA") between Chinook and

Excelled.  Pursuant to the TTA, Excelled was to acquire all of Chinook's obligations under the

Cross-License Agreement it had with OBC.  (*Id.* at 12.)  Judge Daniels found that because the

Cross-License Agreement between Chinook and Excelled prohibited the assignment of rights,

Chinook's transfer of its interest to OBC was invalid and unenforceable against Excelled, as a

third-party.  (*Id.* at 12-13.)  The opinion further pointed out that OBC's arguments based on the

Cross-License were inconsistent with its litigation position of superiority over the mark based on

common law rights.  (*Id.*)

Judge Daniels pointed out that the Parties did not dispute the likelihood of confusion

between their uses of the mark "because they are using an identical Rogue mark for clothing

products sold in the same clothing and department store markets."  (*Id.* at 14.)  As a result, there

existed a presumption of consumer confusion.

4

Regarding OBC's claim that Excelled defrauded the PTO by false representing the types of clothing on which it was using the ROGUE mark, Judge Daniels found that OBC failed to present clear and convincing evidence that Excelled's representations to the PTO were inaccurate. (*Id.* at 17.) Specifically the opinion stated that OBC presented no evidence of Excelled's deceptive intent, and dismissed OBC's unclean hands defense. (*Id.* at 17-18.) Judge Daniels found in favor of OBC, however, by concluding that Excelled had failed to present evidence of consumer injury beyond likelihood of confusion. (*Id.* at 19.)

In sum, Judge Daniels found in that there existed no genuine disputes of material fact regarding Excelled's trademark infringement, counterfeiting, and unfair competition claims. He found, however, that Excelled had not carried its burden to show consumer injury beyond confusion sufficient to survive OBC's motion on its unfair trade practices claim.

On October 10, 2014, OBC moved for relief from the summary judgment decision pursuant to Federal Rule of Civil Procedure 60(b)(1). OBC argued that the Court granted summary judgment on Excelled's counterfeiting claim, despite its skepticism. According to OBC, the opinion contained no discussion of the additional elements required for counterfeiting beyond that which is required for an ordinary trademark infringement claim. (Doc. No. 112 at 1-2.) OBC also objected to Judge Daniels' referral to the undersigned for inquest, on the grounds that it is entitled to a jury trial on damages. (*Id.* at 2.)

On July 8, 2015, Judge Daniels denied OBC's 60(b)(1) motion because the summary judgment decision was not a final judgment since the issue of damages had not yet been decided. (Doc. No. 119 at 2.) Judge Daniels also stated that OBC failed to point to any mistake, surprise or excusable neglect made in granting summary judgment to Excelled for trademark

counterfeiting. (*Id.*) He highlighted OBC's admission that their mark was identical to Excelled's, and noted the undisputed fact that OBC entered into the same trade channels as Excelled with the identical mark. (*Id.* at 4-6.) He did not withdraw the referral to the undersigned based on Excelled's representation that a jury trial would be unnecessary. (*Id.* at 6-7.)

On September 30, 2015, Excelled filed a motion for attorneys' fees and the entry of an injunction, arguing that it is entitled to an award of mandatory fees under section 1117(b), or alternatively, a finding that the case is exceptional, warranting an award of fees under section 1117(c). (Plaintiff's Memorandum of Law ("Pl. Mem.") at 1-2.) Excelled contends that a jury trial is unnecessary under either provision. OBC concedes that if Excelled seeks only minimum statutory damages under section 1117(c), it is not entitled to a jury trial. (Opposition to Pl.'s Motion ("Def. Opp.") at 3.) OBC argues, however, that Excelled may not proceed under sections 1117(a) and (b), even if it seeks nominal damages, without a jury trial. (*Id.* at 1-2.) OBC also argues that Excelled is not entitled to attorneys' fees under any provision. (*Id.* at 2.)

The Court had directed the Parties to brief a different issue than the one ultimately raised by Excelled. The Court is nevertheless able to address the following questions based on the record: 1) whether Excelled meets the standard for actual damages under 15 U.S.C. §§ 1117(a) and (b); 2) if so, whether OBC is entitled to a jury trial on damages given that Excelled is seeking less than twenty dollars in profits; 3) whether Excelled is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c) if it cannot pursue actual damages; and 4) whether Excelled is entitled to attorneys' fees regardless of the provision applied.

## III.   DISCUSSION

### A.   Applicable Law

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, permits plaintiffs to elect as a remedy either

actual damages under 15 U.S.C. § 1117(a) or statutory damages under 15 U.S.C. § 1117(c) for

counterfeiting and/or trademark violations, but not both. *See Louis Vuitton Malletier S.A. v. LY*

*USA, Inc.,* 676 F.3d 83, 105 (2d Cir. 2012).  A plaintiff may make this election "at any time

before final judgment is rendered by the trial court." *Id.* § 1117(c).

### 1.   Actual Damages

When profits are known, a trademark owner may recover as actual damages: (1)

defendant's profits; (2) any damages sustained by plaintiff; and (3) the costs of the action.  15

U.S.C. § 1117(a).  "In assessing a defendant's profits 'the plaintiff shall be required to prove

defendant's sales only; defendant must prove all elements of cost or deduction claimed.'"

*Malletier v. Artex Creative Intern. Corp.*, 687 F. Supp. 2d 347, 357 (S.D.N.Y. 2010) (citing 15

U.S.C. § 1117(a)).

The intentional use of a mark entitles a plaintiff to treble damages of either profits or

damages, whichever is greater.  15 U.S.C. § 1117(b).  "The trebling of [a] defendants' profits is

mandatory if a court determines that defendant's actions were willful, absent extenuating

circumstances." *Chole v. Zarafshan*, No. 06-CV-3140 (RJH) (MHD), 2009 WL 2956827, at *7

(S.D.N.Y.  Sept. 15, 2009) (*citing Louis Vuitton,* 765 F.2d at 971-72).  "For purposes of trebling

the award, an infringement is 'willful' if the defendant had [actual or constructive] 'knowledge

that its actions constituted an infringement.'" *Zarafshan*, 2009 WL 2956827, at *7 (*citing*

*Fitzgerald Publ'g Co. V. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986)).

### 2.    Statutory Damages

The Lanham Act alternatively provides for statutory damages up to "$1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed" where there is a finding that infringement was willful. 15 U.S.C. § 1117(c)(1).  "Use of a counterfeit mark is willful if the defendant has actual knowledge that it is infringing Plaintiff's copyright or if it recklessly disregards the high probability that it was infringing." *Chanel, Inc. v. Gardner*, No. 07-CV-6679 (GBD) (MHD), 2011 WL 204911, at *2 (S.D.N.Y. Jan. 21, 2011) (citing *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 503 (S.D.N.Y. 2008); *NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 475 (S.D.N.Y. 2001)).

If there is no finding of willfulness, a plaintiff may recover between $1,000 and $200,000 per counterfeit mark per type of goods or services sold. 15 U.S.C. § 1117(c)(2).  Congress added this provision in 1996 through the Anticounterfeiting Consumer Protection Act, specifically to address a situation where defendants have not provided sufficient records for a plaintiff to establish actual damages. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (citing S.Rep. No. 104-177 at 10 (1995)); *Sara Lee Corp. v. Bags of New York, Inc.,* 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) ("[N]ondisclosure is a key reason for statutory damages").

### C.    Remedy of Damages

### 1.    Entitlement to OBC's Profits

Excelled has elected as its remedy treble damages under 15 U.S.C. § 1117(b) because it seeks mandatory attorneys' fees.  To benefit from section 1117(b), Excelled must first seek actual damages under section 1117(a).  Excelled is pursuing a nominal damage award of less

than twenty dollars "in lieu of all of OBC's profits," arguing that OBC never disclosed the full amount of its profits.  (Pl. Mem. at 12.)

Sections 1117(a) and (b), on which Excelled relies to obtain mandatory fees, do not provide for the recovery of nominal damages.  *See Greene v. Brown*, 104 F. Supp. 12, 18 (D.C. Cir. 2015).  OBC correctly points out that nominal damages and actual damages are not the same.  Black's Law Dictionary defines nominal damages as "a trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." *Damages,* BLACK'S LAW DICTIONARY (9th ed. 2009).  Actual damages are defined as "an amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Id.*  In the trademark context, actual damages are proscribed as "compensation and not a penalty."  15 U.S.C. § 1117(a).

As the record stands, OBC's profits are unknown.  Contrary to Excelled's assertion that OBC has not disclosed the full amount of its profits, OBC claims that it made less than $5,000 in sales.  (Def. Opp. at 22.)  The burden to prove OBC's sales, however, falls on Excelled if it seeks damages under section 1117(a).  By stating that OBC has never disclosed its profits, Excelled has merely made a bare-bones assertion that shifts the burden of proving sales to OBC.  Actual damages by definition require a showing of injury or loss, which Excelled has similarly not established by merely seeking nominal damages.  An election of nominal damages effectively concedes that there is no substantial injury to be compensated.

Excelled may not avoid its burden to prove defendant's sales by seeking nominal damages because a court would have no basis to assess whether the amount sought was inadequate.  Excelled essentially concedes this point by citing to a case in which the Second

9

Circuit determined that the requirements for actual damages or profits under the Lanham Act do not apply to nominal damages. *See Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 2014 WL 185222, at *9 (S.D.N.Y. Jan. 16, 2014) ("Nominal damages and costs therefore remain *potentially* available to plaintiff should it prevail on liability claims") (emphasis added) (citing *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) ("The Lanham Act also provides for the award of costs in all cases").

Section 1117(a) allows the Court in its discretion to award a just sum if the amount of recovery based on profits is either inadequate or excessive. 15 U.S.C. § 1117(a). The Court may decline to award costs in its discretion. *Guthrie Healthcare Sys.*, 2014 WL 1852222, at *9 n. 6) (citing *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. sup. 2d 569, 576 (S.D.N.Y. 2011)). Excelled has not proven OBC's sales as required by the statute for the Court to accurately assess profits or damages, even if before a jury. 15 U.S.C. § 1117(a) ("The court shall assess such profits and damages or cause the same to be assessed under its direction").

Excelled alternatively elected statutory damages, which do not require proof of damages or profits. *See Greene*, 104 F. Supp. at 18. Assuming as true Excelled contention that OBC did not fully disclose profits, which OBC disputes (*see* Def. Opp. at 9), Congress explicitly allowed prevailing plaintiffs to recover statutory damages in the absence of sufficient records to establish profits. *See Gucci Am., Inc.*, 315 F. Supp. 2d at 520. The Court in its discretion therefore choses to reject Excelled's claim for profits under sections 1117(a) and (b). *See id* (finding that the court must analyze damages under section 1117(a) and (b) because the plaintiff chose not to rely on statutory damages).

**2.      Entitlement to Statutory Damages**

Excelled seeks minimum statutory damages pursuant to 15 U.S.C. § 1117(c) because

OBC has been found liable for counterfeiting.  (Pl. Mem. at 20.)  While Excelled claims that it

could pursue statutory damages for willful infringement, it is willing to accept minimum

statutory damages under 15 U.S.C. § 1117(c)(1) to avoid the expense of a jury trial.

To prevail in a trademark suit, a plaintiff must show that its mark is entitled to protection,

and that the defendant's use of a similar or identical mark is likely to cause consumer confusion.

*International Information Sys. Sec. Certification Consortium, Inc. v. Security University, LLC*,

823 F.3d 153, 160 (2d Cir. 2016) (citing *Brennan's, Inc. v. Brennan's Rest., LLC,* 360 F.3d 125,

129 (2d Cir. 2004)).  Judge Daniels found that Excelled had established the validity of its

ROGUE mark, and that it was undisputed that Excelled was the first to use and register the mark

for use in department and clothing stores.  (Summ. J. at 8, 10.)  OBC, by contrast, did not present

evidence for a reasonable juror to conclude that it had priority of the mark for sale in department

and clothing stores.  (*Id.* at 12.)  The Parties did not dispute a likelihood of confusion because

they were using an identical mark for clothing products sold in the same trade channels.  (*Id.* at

13-14.)  Judge Daniels also applied a presumption of customer confusion because the Parties

used identical marks in the same stores.  (*Id.* at 14.)  He found, however, that Excelled failed to

present evidence of consumer injury beyond general likelihood of confusion.  (*Id.* at 19.)

Within the statutory limits of recoverable amounts, courts "have 'considerably broad

discretion' to balance the 'punitive, deterrent function' of an award against the direction that it

'not constitute a windfall for prevailing plaintiffs."  *Louis Vuitton*, 472 Fed. App'x 19, 22 (2d

Cir. 2012) (citing *Rolls-Royce PLC v. Rolls-Royce USA, Inc.,* 688 F. Supp. 2d 150, 157

(E.D.N.Y. 2010)).  Accepting the statutory minimum despite prevailing on its trademark and

counterfeiting claims certainly does not constitute a windfall for Excelled.  Given that Excelled

has prevailed on the merits, and does not seek statutory damages based on a finding of

willfulness, I recommend that statutory damages be awarded to Excelled in the amount of

$1,000.

## C.    Jury Trial

If Excelled is entitled to seek nominal damages under sections 1117(a) and (b), however,

the Court must decide whether OBC's right to a jury trial is implicated.  OBC has conceded that

it is not entitled to a jury trial if Excelled receives minimum statutory damages under section

1117(c).  (Def. Opp. at 3.)

Excelled seeks treble damages of defendant's profits pursuant to 15 U.S.C. § 1117(b)(1),

which requires a showing that OBC intentionally used the mark, knowing it was counterfeit.

Excelled contends that there is "no doubt" OBC's counterfeiting acts were intentional, and that

OBC earned profits from those acts.  It also argues that there are no extenuating circumstances

that excuse the trebling of damages.

The Supreme Court has held that a claim for a money judgment, including an action for

damages in a trademark infringement case, is a "wholly legal" claim in nature so that the right to

trial by jury is not lost.  *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962).  A plaintiff may

not recover a defendant's profits until a jury resolves the factual issue of whether a defendant's

infringement was willful.  *Nike, Inc. v. Top Brand Co.*, No. 00-CV-8179 (KMF) (RLE), 2005

WL 1654859, at *11 (S.D.N.Y. July 13, 2005); *see also Fendi Adele S.R.L. v. Filene's Basement,

Inc.*, 696 F. Supp. 2d 368, 393 (S.D.N.Y. 2010) (finding that there are issues of fact for a jury to

decide regarding a defendant's willfulness)). It follows that the issue of whether there are extenuating circumstances that excuse trebling is also an issue for the jury.

Excelled argues that a nominal damages award under twenty dollars does not entitle OBC to a jury trial. (Pl. Mem. at 12.) It cites as support *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4. ("We additionally note generally that in nominal damages cases, when such damage requests are below twenty dollars, there is no right to a jury trial"). OBC argues that Excelled's reliance on that case is inapposite because *Van Wie* is a case under 42 U.S.C. § 1983, and not under the Lanham Act. This argument is immaterial. The Seventh Amendment states that "in suits at common law, where the value in controversy *shall exceed twenty dollars*, the right of trial by jury shall be preserved." U.S. CONST. amend. VII (emphasis added). The plain language of the amendment therefore supports the proposition that OBC's jury trial right is not implicated if Excelled is allowed to pursue nominal damages of less than twenty dollars.

**D.      Attorneys' Fees**

While a successful plaintiff in a trademark infringement action is entitled to recover damages, an award of attorneys' fees is "reserved for exceptional cases." 15 U.S.C. § 1117(a); *Louis Vuitton*, 676 F.3d at 109. Section 1117(b) provides for a mandatory attorneys' fee award for willful infringement. *See Chanel, Inc.*, 2011 WL 204911, at \*5 ("Attorneys' fees are specifically recoverable under 15 U.S.C. § 1117(b) for willful infringement) (citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d 849, 854 (2d Cir. 1995) (internal citations omitted). Courts are divided, however, on whether attorneys' fees are recoverable if a plaintiff elects to recover statutory damages as opposed to actual damages. *See Louis Vuitton*, 676 F.3d at 106-09 (collecting cases).

The Second Circuit has resolved the question for courts in this district by concluding that damages are separate and apart from the attorneys' fees provision under section 1117(a). *See id.* at 109. Actual damages are "the primary or default source of trademark infringement remedies available to a victorious plaintiff," and statutory damages are a "carveout" or alternative remedy. Attorneys' fees are available in either context. *Id.* "As long as the exceptional case requirement of section 1117(a) is met, the text of sections 1117(a) and 1117(c) leaves an award of attorneys' fees within the discretion of the court … a plaintiff's election of remedy under 1117(c) therefore does not foreclose the possibility of a recover of attorneys' fees under 1117(a)." *Id.* at 109-110.

A finding of willfulness, fraud or bad faith is a prerequisite to "to finding a case 'sufficiently exceptional to warrant an award of fees' under section 1117(a)," but such a finding does not automatically entitle a plaintiff to fees. *Mister Softee of Brooklyn, Inc. v. Boula Vending, Inc.,* 484 Fed. App'x 623, 625 (2d Cir. 2012) (citing *Louis Vuitton*, 676 F.3d at 108-09). "A finding of bad faith is warranted 'when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *Therapy Products, Inc. v. Bissoon,* No. 07-CV-8696 (DLC), 2009 WL 2709279, at * 2 (S.D.N.Y. 2009) (citing *Baker v. Health Mgmt. Sys., Inc.,* 264 F.3d 144, 149 (2d Cir. 2001)). "Courts have inferred bad faith where a plaintiff's claims are meritless." *Id* (citing *New Sensor Corp. v. CE Distribution LLC,* 367 F. Supp. 2d 283, 288 (E.D.N.Y. 2005)).

Excelled argues that this is an exceptional case such that fees are warranted because OBC's counterclaim was frivolous, its acts of counterfeiting were willful, and its allegation of prior use in clothing and department stores was knowingly false. (Pl. Reply Mem. at 6.) OBC counters that it fully believed that it was the senior user of the mark, and that it had the right to

14

sell ROGUE-branded clothing in any store based on the 2007 settlement agreement with Excelled. (Def. Opp. at 12, 14.) It contends that Judge Daniels refused to find willfulness" in his summary judgment decision. (*Id.* at 12.) OBC maintains that its positions had a legal bases and that it did not take unreasonable litigation positions because the Court narrowed the trade channels in which Excelled could claim to be the superior user to department stores and clothing stores. (*Id.* at 15.)

The Court does not doubt OBC's claim that it had a good-faith belief it was the superior user at common law. OBC did not learn of Excelled's registration of the mark until 2005, when it attempted to register its own mark. (Summ. J. at 5.) The trouble arose when OBC began selling its mark in clothing and department stores in 2011, despite its knowledge of Excelled's applications with the PTO. (*Id.* at 4.)

OBC was aware that Excelled was the first to use and register the mark for use in department stores and clothing stores. (*Id.* at 10.) It was also aware of the likelihood of confusion between the identical marks, when it was put on notice by the PTO. (*Id.* at 6.) The PTO did not approve OBC's mark until 2008, when OBC amended its application to state that it would primarily sell ROGUE-branded clothing in its brewpubs and on its website, and would use the clothing for promotional purposes. (*Id.* at 6.) It overcame the likelihood of confusion by amending its application to point out specific trade channels that differed from Excelled's channels.

OBC nevertheless entered Excelled's channels of trade in 2011 in violation of the Lanham Act. OBC's president admitted that it did not sell ROGUE clothing in department and clothing stores until 2011 during his Rule 30(b)(6) deposition. (Pl. Mem. at 8 n. 6.) OBC then

15

raised a counterclaim for trademark infringement, despite its knowledge of the likelihood of confusion between the marks. (Doc. No. 37.) Judge Daniels dismissed OBC's counterclaims because Excelled established its priority of use of the mark in clothing and department store trade channels. (*Id.* at 11.) The Court therefore finds that OBC's infringement was willful, and an award of attorneys' fees is warranted.

E.     **Injunctive Relief**

Excelled asks that the Court enter a permanent injunction based on the language contained in the "Prayer for Relief" section of the Complaint. (Pl. Mem. at 25; *see also* Compl. at 13-14.) It also asks that the Court order OBC to "deliver up for destruction all products, advertisements, labels, signs, prints, packages, wrappers" and other materials in OBC's possession bearing the name ROGUE that could have been used in any other trade channels other those authorized by the summary judgment decision. (*Id.*)

In his summary judgment decision, Judge Daniels enjoined OBC from using the ROGUE mark, but limited the injunction to clothing sold in department and clothing stores. The injunction did not apply to OBC's clothing sold for promotional purposes, or sold primarily in OBC's brewpubs and on its website. (Summ. J. at 19.) OBC argues that the issue of permanent injunctive relief cannot be decided without an evidentiary hearing because it is unclear what constitutes "department and clothing stores." (Def. Opp. at 23.) According to OBC, Excelled's expert witness could not define a clothing store. (*Id.* at 24.) OBC believes that it is therefore uncertain where it can and cannot sell its clothing. OBC reasons that the scope of the injunction should be narrowed even further to "only those department stores and clothing stores where

16

Plaintiff sells its clothing, because those are the only channels in which any likelihood of

confusion exists." (*Id*) (internal quotations and emphasis omitted). The Court disagrees.

"To obtain a permanent injunction under the Lanham Act, a plaintiff must (1) succeed on

the merits and (2) demonstrate irreparable harm if the relief is not granted." *Chanel, Inc.*, 2011

WL 204911, at *4 (citing *Gucci Am., Inc. v. Curved Fashion,* 2010 WL 308303, at *2 (S.D.N.Y.

Jan. 20, 2010); *Burberry Ltd. & Burberry USA v. Designers Imports, Inc.,* 2010 WL 199906, at

*11 (S.D.N.Y. Jan. 19, 2010)). Excelled has succeeded on the merits of its trademark and

counterfeiting claims with a grant of summary judgment. Irreparable harm requires that the

plaintiff demonstrate a reasonable basis for believing that he is likely to be damaged as a result

of the infringement. *L. & J.G. Stickley, Inc. v. Cosser*, 255 Fed. App'x 541, 543 (2d Cir. 2007)

(false advertising) (citing *Johnson & Johnson v. Carter-Wallace, Inc.,* 631 F.2d 186, 190 (2d Cir.

1980). "The fact that the [P]arties' products compete in the same market weighs in favor of a

finding of irreparable harm." *Id* (citing *Ortho Pharm. Corp. v. Cosprophar, Inc.,* 32 F.3d 690,

694 (2d Cir. 1994)). Excelled has established irreparable harm because counterfeiting marks are

deemed inherently confusing, and it is therefore reasonable that Excelled would feel harmed by

consumer confusion. *See Chanel, Inc.*, 2011 WL 204911, at *4 (citing *Fendi Adele S.R.L. v.

Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010)

(collecting cases). Around 2008, when it amended its PTO application for approval, OBC

seemed to understand the difference between the department and clothing store trade channels,

and trade channel it defined for the sale of its goods. Beginning in 2011, however, OBC

admittedly sold its clothing in the same market as Excelled, namely department and clothing

stores.

Excelled's proposed injunction is detailed and specifically worded to enjoin OBC from using the ROGUE mark anywhere other than its "own brew pubs and website as compliments to and in promotion of [OBC's] own brewing and beverage business." (Compl. at 13.) This language is consistent with the preliminary injunction entered in this case, and is similar, if not identical to, the language used in OBC's application to the PTO that was approved in 2008. I therefore recommend that the Court enter a permanent injunction as outlined in Excelled's Prayer for Relief.

## IV.   CONCLUSION

For the reasons stated above, I recommend that the Court **GRANT IN PART** Excelled's motion for attorneys' fees, and award statutory damages in the amount of **$1,000**, plus reasonable attorneys' fees to be determined upon submission contemporaneous time records, or any other relevant evidence. I also recommend that the Court enjoin OBC from using the trademark as detailed in Excelled's Complaint. The clerk of court is directed to close Doc. No. 128.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 1310, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 1970, New York, New York 10007. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150

(1985); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*);

28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: August \_\_\_\_, 2016**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge

19